LOIS KELLEY, APPELLEE, V. LEE C. LUKE, APPELLANT.

299 N. W. 593

FILED JULY 29, 1941. No. 31169.

*Wilber S. Aten,* for appellant.

*Anderson, Storms & Anderson* and *Robert E. Frush,* contra.

Heard before SIMMONS, C. J., ROSE, EBERLY, PAINE, MESS-MORE and YEAGER, JJ.

SIMMONS, C. J.

This case presents a question as to the liability of the owner and operator of a hotel to compensate an invitee for injuries received by a fall on the premises.

Plaintiff recovered a judgment and defendant appeals.

There is no serious dispute as to the physical situation existing at the hotel nor the facts of the fall. The defendant's hotel faces south and west on a main business corner in Holdrege. The lobby faces the south. It has in it large windows and an entrance door from the street. The coffee shop is immediately east of the lobby and in a separate room. It also has an outside entrance and large windows on the south. The coffee shop is partially divided by a serving counter and shelves that run lengthwise east and west and stand about six feet high. This counter is some four feet from the west edge of the coffee shop and does not interfere with light coming in from the outside directly south of the door hereinafter described. In the south part

of the room are lunch counters, and tables for guests are in the part north of the serving counter. The coffee shop is connected with the lobby by a door which is three feet wide, and opens into the coffee shop. The floor level of the coffee shop is a little over four inches below the level of the lobby floor. Immediately in front of the door leading from the lobby into the coffee shop is a semicircular platform six feet eight inches wide, at its edge parallel with the door entrance, and three feet five inches wide from the door to its outer edge, *i. e.*, the platform extends out from the lobby door three feet five inches and then descends by a straight line some four inches to the level of the coffee shop floor. The platform level is the same as the level of the lobby floor. The platform and the floor generally are of grayish brown terrazzo; however, extending about six inches wide around the outer edge of the platform, down its side and for about a foot wide around the base of the platform, the terrazzo is of a darker color. On the edge of the platform, about three feet from and immediately in front of the door, is a brass post about three feet high. Sometime before the accident, the dark edge of the platform had been painted blue. The evidence is that such steps are in use in public buildings in this state.

The accident occurred at noonday, July 25, 1939. The sun was shining brightly outside and it was hot. The awnings were partly down. There were no artificial lights burning in the coffee shop. The lobby was darker than the outdoors, the coffee shop darker than the lobby.

Plaintiff had an appointment to meet a friend and go to lunch at the hotel at noon. Although she had never been in this hotel before, she was a traveling saleswoman and spent considerable of her time in hotels and public eating houses. She entered the lobby and stood for some minutes looking out the window into the street. The friend came in; they talked a moment and started together into the coffee shop. In her own words this is what happened as told on direct examination.

"Tell us now about going into the coffee shop. A. We

went to the door and the door was shut. I put my hand on the door and Mr. Hon who was behind me also put his hand on the door and pushed it open. I glanced down, as I always do, to see if there was a step at the door. I looked down and didn't see any step. The floor was mottled and looked the same to me. I glanced up and looked around for a table. I saw one over in the corner as we came in. I walked straight ahead, or attempted to. Of course, the step was there and I went down. * * * Q. How far had you proceeded, as far as you know, before you fell? A. Well, I had just glanced into the coffee shop and glanced around. The coffee shop was pretty well filled and I glanced around and saw the table and started for it. I think it was the first or second step I took, no doubt, when I went down. Q. You glanced at the floor? A. As I went into the door and put my hand on the door. Q. What did you see? A. It was a mottled floor and looked to me to be all on a level."

On cross-examination she was asked the following questions and gave the following answers:

"As you went through the door going into the coffee shop you glanced around and looked down at the floor; tell us where you were at that time. A. I walked to the door and put my hand on the door and started to push it open. Mr. Hon then pushed it open and I looked down to see if there was a step. Q. Right at the door? A. Yes, sir. I saw there was no step. I noticed the floor was mottled in design; looked to be perfectly level. Q. Did you look at the floor about where the post was at that time? A. Well, I wouldn't know. As I went in I looked down. I always look down when I go in a door. I glanced along the floor and saw it was a mottled floor which looked to be perfectly level to me. Then I looked for a table and started for the table. * * * Q. You didn't notice the people and tables in the coffee shop were on a lower level? A. I didn't pay any attention to that. I was looking for a vacant table."

Mr. Hon, who was with the plaintiff, testified for her that, "as we opened the door, Mrs. Kelley glanced down at the floor and I did the same thing. I always do when I enter a

strange place. Then I think Mrs. Kelley looked around looking for a place to sit * * * and we started for the table." He was asked, "Was there any hesitation on the part of either of you as you went through the door?" He replied, "As I went through the door I noticed Mrs. Kelley glance down and I did the same thing. I would say we hesitated just momentarily and then went on through." He further testified that, "as you leave the lobby * * * and when you get through the door, you are on the platform."

Another of plaintiff's witnesses on cross-examination testified as follows: "You actually saw her start to fall? A. Yes. Q. Just before she fell where was she looking? A. I would say looking ahead. Q. Eastward? A. Yes. Q. That's what you mean by ahead? A. I think she was looking to see where they were going; looking for a vacant table. Q. She looked around? A. Yes."

There were no warning signs other than the difference in the color of the floor on the edge and at the base of the platform and the presence of the brass pole.

Defendant's witnesses estimate that this entrance has been used by 100,000 people a year the ten years the hotel has been in operation. The evidence indicates that several people have stumbled there and that three people have fallen there. Of these three, one was the plaintiff; one fell since the plaintiff and one before, although notice of the earlier fall does not seem to have been given to the defendant until after the time of plaintiff's accident. The details of these accidents are not shown. At the close of all the evidence the defendant moved separately that the jury be instructed to render a verdict in his favor, and that the action be dismissed for the following reasons: (1) The evidence was insufficient to sustain a verdict in plaintiff's favor; (2) the plaintiff has failed to sustain the burden of proof; (3) the evidence fails to establish any negligence on the part of this defendant proximately causing the accident; (4) the plaintiff was guilty of more than slight negligence. The trial court overruled the motion. Defendant appeals.

Plaintiff states: "The basis of the action was the negli-

gence of the appellant (defendant) in constructing and maintaining a dangerous and unsafe step between the lobby and coffee shop in said hotel, and in failing to give adequate notice of the existence of such dangerous step."

It is apparent that the plaintiff's fall was not caused by her inability to see the step. Expert testimony was offered as to the amount of light around the platform. It is sufficient to note that Mr. Hon, plaintiff's witness, testified that one "could have easily seen" the edge of the step had "particular attention" been paid to it, "but I did not notice it." Both plaintiff and her friend noticed the mottled color of the floor, that the platform was of the same color, and plaintiff "noticed a design of some kind." Plaintiff "saw there was no step" "right at the door." Plaintiff's friend also testified that immediately after the accident there was light enough in the dining room to read the menu without difficulty. It may also be noted that in their description of the platform and how the accident happened plaintiff and her friend do not refer to faulty light or a darkened condition. Darkness or dimness of light calls upon a person to exercise greater caution for his own safety than is ordinarily required. *Wentink v. Traphagen*, 138 Neb. 41, 291 N. W. 884.

The rule, well supported by the cases, is: "The mere fact that there is a slight difference between floor levels in different parts of a business building which the public are invited to enter does not in itself constitute negligence." 45 C. J. 866.

This court in two cases (decided since this action was tried) has reviewed somewhat similar situations. In *Pierce v. Burlington Transportation Co.*, 139 Neb. 423, 297 N. W. 656, the floor of a ladies' rest room was elevated some six or seven inches above the floor of the anteroom. Plaintiff slipped and fell over the step and was injured. This court there said: "The premises upon which the plaintiff was invited to enter and where the accident happened was a hotel which must be kept reasonably safe for all persons invited to use its facilities. The proprietor of a hotel is not an insurer against accidents to guests or other invitees. Lia-

bility arises only from a failure to exercise reasonable care and prudence in keeping the premises safe. * * * The mere fact that there was a step which plaintiff would have to ascend and descend in going to and from the rest room does not evidence a want of due care on the part of the hotel proprietor. Such steps are usual and customary in hotels. * * * There is nothing inherently dangerous in having the floor of a toilet and lavatory raised six or seven inches above the floor of the anteroom. * * * There is a failure to prove any negligence on the part of the defendant Jensen Hotel Company. Neither is there sufficient evidence to sustain a finding that the construction was dangerous or that a dangerous condition was the cause of the accident."

Again in *Lepley v. Von Dorn,* 139 Neb. 410, 297 N. W. 642, this court considered a case where there was a step down from an elevated floor in a bathroom in an apartment house. There the negligence was alleged to consist in not having the hallway sufficiently lighted and in failing to give a warning of danger. This court there said: "The construction of a bathroom with an elevated floor is common in homes, hotels, apartment houses, and public places. Lighting arrangements such as were in the hall and bathroom are in common use. * * * No inherent danger is shown either in the construction of the bathroom floor or the lighting of the hallway. It is obvious that no affirmative act of the defendants caused Mrs. Johnson to fall." There this court held that the proximate cause of the accident was the plaintiff's own acts.

A case almost exactly in point in all particulars is that of *Mills v. City of Wichita,* 146 Kan. 772, 73 Pac. (2d) 1054. There a public building was constructed with two rooms of different floor levels. The entrance into one room from the other opened upon a semicircular platform, elevated 5½ inches above the surrounding floor. The platform was slightly larger than the one in the case before us. It was made of terrazzo. It had a border around the base of the same color as the platform and different from the floor color. The plaintiff entered the room upon the platform,

walked along and fell off to her injury. Almost the identical charges of negligence in the construction of the platform, lights, etc. are made there as are made here. There the plaintiff fell because she was not looking where she was stepping. Here the plaintiff looked down, saw the platform, looked up, located a table and started toward it, the evidence being clear that, after looking down at the platform, plaintiff took one or two steps, and that during that time she was looking ahead at a table where she proposed to eat. There the court reviewed the authorities and held that the step was not such a dangerous one as to make the city liable. The same conclusions are necessary here.

The construction of rooms of different floor elevations is common in homes, hotels, apartment houses and public places. The caution which plaintiff and her companion used in looking down at the door indicates knowledge on their part of that fact. No inherent danger is shown either in the construction of the floor of the two rooms, or the platform, or the lighting of the rooms. The fact that there was a step that plaintiff had to descend does not evidence a want of due care on the part of the defendant. It is apparent that what happened was that plaintiff and her friend, upon opening the door, looked down, determined that there was no step down at the door (and there was none) ; they then looked up, located a table, started walking toward it, without further examination of the floor inside the coffee shop, and without paying "any attention" to the fact that the floor of the coffee shop was below the level of the platform, took one or two steps and plaintiff fell to her injury.

The conclusion is inescapable that the accident was caused by the failure of plaintiff to exercise due care for her own safety.

The judgment of the district court is reversed and the cause is dismissed.

REVERSED AND DISMISSED.