ANNE MAHER, Plaintiff below, Appellant, v. BARBARA W. VOSS and NORWOOD W. Voss, Defendants below, Appellees.
WILLIS MAHER, Plaintiff below, Appellant, v. BARBARA W. VOSS and NORWOOD W. Voss, Defendants below, Appellees.

[3]See *Trincia v. Testardi*, 30 *Del. Ch.* 182, 189-190, 57 *A.* 2d 638.

*(June* 11, 1953.)

SOUTHERLAND, C. J., and WOLCOTT and TUNNELL, J. J., sitting.

*Paul R. Rinard* and *William E. Taylor, Jr.,* for appellants.

*Joseph Donald Craven* for appellees.

Supreme Court of the State of Delaware, No. 5, 1953.

SOUTHERLAND, C. J.:

The briefs and argument on this appeal involving an action to recover damages for negligence, bring before us two questions:

1. Did the evidence justify a finding of contributory negligence as a matter of law?

2. Was there sufficient evidence to go to the jury on the issue of defendants' negligence?

We shall refer to plaintiffs below, appellants, as "plaintiffs"; to defendants below, appellees, as "defendants"; and to Mrs. Anne Maher as "plaintiff".

■ Before taking up the merits, a motion to dismiss the appeal requires consideration. Final judgment for the defendants was entered on January 2, 1952. A motion for a new trial was denied on August 30, 1952. A praecipe for writ of error was filed February 13, 1953. In accordance with Rule 5(4) of this Court the praecipe undertook to specify the judgment appealed from. It is described as the "final judgment * * * dated 30th of August, 1952." On its face, the praecipe is ambiguous. Defendants, citing Trowell v. Diamond Supply Co., 8 Terry 422, 91 A. 2d 797, and French v. Jeffries, 7 Cir., 161 F. 2d 97, say that the praecipe should be construed as an appeal from the motion denying a new trial and that the appeal should be dismissed, since no question of abuse of discretion is presented. In support of the motion defendants point to the fact that plaintiffs' appendix fails to include a copy of the judgment of January 2, 1952, but does include a copy of the order of August 30, 1952. We think this a case of patent ambiguity in the praecipe which we should resolve in favor of the plaintiffs. As against the inference to be drawn from the appendix, there is the statement in the brief that the appeal is from the final judgment of January 2, 1952. As between the two inferences, that supporting the right of appeal is to be favored. We treat the matter as one of mistake in the date.

■■ Defendants suggest that the final judgment is not before us, because not contained in the "abstract" of the record

(i.e., the appendix to plaintiffs' brief). This is a misconception of the function of the appendix. Cases in this Court are not heard upon an abstract, but upon the original record sent up from the lower court. Rule 7(1). The record shows the entry of final judgment on January 2, 1952.

The motion to dismiss is denied, and we turn to the merits.

A brief summary of the circumstances which led to this suit, and of plaintiffs' evidence touching the issue of contributory negligence, is as follows:

Plaintiff was invited by Barbara W. Voss, one of the defendants, to attend a meeting of the Democratic Women of New Castle County to be held in the home of Dr. and Mrs. Voss in Wilmington on March 30, 1950. Plaintiff accepted the invitation and arrived at the house about eight o'clock in the evening. At least four other guests, Miss Grace Aiken, Mrs. Mary Morris, Miss Brulatour and Mrs. Cresswell, also attended the meeting. As the guests arrived Mrs. Voss received them at the threshold of the the living room, to which the front door apparently gave immediate access, and took the coats and wraps and disposed of them in the dining room. The dining room adjoined the living room immediately on the rear and was divided from it by a wall in which was a large opening, lacking any door.

The business of the meeting having been finished, the guests made ready to depart. Plaintiff went into the dining room to get her coat and found it hanging on a hook immediately inside what appeared to her to be a coat closet. She then volunteered to get the coat of another guest, Mrs. Morris, and returned to the supposed closet for that purpose. The "closet" was in fact a landing at the top of a stairway leading to the basement. Its front was lighted dimly from lights in the ceiling of the dining room, but the light was insufficient to illuminate the rear. Coats were hanging on both sides of the closet. She stepped toward the rear in an attempt to find Mrs. Morris' coat and fell headlong down the stairway and suffered severe injuries.

Thereafter plaintiff and her husband each brought a suit against the defendants, Dr. and Mrs. Voss, to recover damages. The complaints alleged that the place where the coats and wraps had been hung by Mrs. Voss was to all outward appearances a clothes closet in the dining room but in fact was an open un-lighted cellarway; that plaintiff had the right to rely on the apparent use of the opening as a coat closet; and that defendants were grossly negligent in failing to warn her of the hazard and should have known, or should have had reasonable cause to believe, that a guest going to the closet might be entrapped by the appearance of the opening and might suffer injury.

A motion to dismiss the complaints was brought on for hearing and was denied. 7 *Terry* 418, 84 *A.* 2d 527.

The case came on for trial. At the conclusion of plaintiffs' evidence defendants moved for a directed verdict on three grounds, the third of which was that plaintiff was as a matter of law guilty of contributory negligence.

After argument the court determined that as a matter of law Mrs. Maher was negligent in proceeding to the unlighted portion of the closet and directed a verdict for the defendants.

Plaintiffs appeal, urging that the question of contributory negligence was for the jury. Defendants say the court below was correct in its holding; and also urge that in any event there was no evidence of defendants' negligence sufficient to take the case to the jury, and hence that the judgment should be affirmed.

1. *Was Mrs. Maher guilty of contributory negligence as a matter of law?*

For our present purpose we shall assume actionable negligence on the part of the defendants. Certain aspects of that question will be examined later.

The evidence touching the issue of contributory negligence may be summarized as follows:

Two or three of the guests went to the dining room to get their coats. Miss Aiken opened the "closet" door, "stepped in about two steps and leaned over and got [her] coat" which was in the back on the right. Mrs. Maher went to the opening and saw her coat hanging just inside the door. She took her coat, put it on a chair in the dining room, and then volunterred to get Mrs. Morris' coat, Mrs. Morris being engaged in calling a taxicab for the use of herself and Mrs. Maher. Mrs. Maher's testimony as to what then happened is as follows:

"Well, immediately in front of the closet the first coat— well, it was the first coat on this side. There was a coat hanging that seemed to have black fur on it. I said to Mrs. Morris, 'Does your coat have black fur on it?' She said 'No. No, it's a plain gray coat.' I stepped further into the closet to go through the coats to see which was hers, and as I stepped further in—well, I just went headlong into void."

She further testified that the space into which she fell was black. On cross-examination she further testified as follows:

"In addition to the lack of light, I believe that you testified there was very little light in the closet? Yes.

"Was your vision also obscured by coats hanging on both sides of that closet? Were there coats hanging on both sides of the closet? Yes.

"And because of the lack of light and the obscurity of your vision was it necessary for you to kind of push these coats out of the way and feel your way into the closet to feel for Mrs. Morris' coat? I pushed them aside and walked in further.

"Did you ever find out how far back in the closet Mary Morris' coat was? No, I didn't."

Asked by the court whether she remembered how wide or how deep the platform is, she replied:

"No, I don't, sir. I just know that I took a few steps into it to get Mary's coat."

These is no evidence of the exact length of the platform extending from the door to the top of the cellar stairs. Miss Aiken's "two steps" and Mrs. Maher's "few steps" were, as suggested by plaintiffs' counsel, probably short ones. The inference might be drawn that at least one or more of the coats had been hung in dangerous proximity to the end of the platform.

On the motion for a directed verdict the court below applied the well-settled principle of law derived from the so-called "step-in-the-dark" cases. A person who comes into an unfamiliar situation, where a condition of darkness renders the use of his eyesight ineffective to define his surroundings, is not justified, in the absence of any special stress of circumstances, in proceeding further, without first finding out where he is going and what may be the obstructions to his safe progress. A violation of that rule is contributory negligence as a matter of law. 1 *Shearman and Redfield on Negligence (Rev. Ed.)* 320.

The cases supporting this rule are in general those where a person enters a completely dark opening on unfamiliar premises. At all events that is the typical case which calls for a pronouncement by the trial court of contributory negligence as a matter of law. We do not question the soundness of the rule in such a case. The instant case, we think, is different. The opening was dimly lighted, sufficient to disclose that coats had been hung in it and sufficient to identify a coat hanging just inside the door. The rear of the supposed closet appears to have been completely dark.

We think that a jury might reasonably find that the plaintiff, standing safely upon what appeared to be the floor of a closet, was misled by appearances, with some justification, into believing that it was safe to step further. The appearance of the opening, the hanging of the coats, the platform beneath her feet, and the dimness (but not complete absence) of light—all these facts taken together might well lead reasonable men to reject the conclusion that Mrs. Maher was careless of her own safety. As to the circumstances of partial illumination, the remarks of the

Court of Appeals of Ohio in *Carr v. Fox*, 31 *N. E.* 2d 713, 715, are pertinent. That case, like the present one, involved a dimly-lighted opening. The court declined to find contributory negligence as a matter of law. Refusing to apply the "step-in-the-dark" cases, the court said:

"These cases are inapplicable to the present situation, for the reason that the evidence shows that the area involved was neither dark nor light, but, on the contrary, due to the existence of some light was dimly lighted. This presents one of the most trying situations for anyone whether on foot or driving a vehicle. Objects are presented in a distorted dimness, which may justify proceeding, but often obscures pitfalls which would be avoided if the light were stronger, or be avoided entirely if there was less light. This ground is not available as a justification for the action of the court."

It is also true that it would be within the province of the jury to find that plaintiff, unable to see anything in the rear of the supposed closet, should have halted at the place where illumination ceased.

In this case, in which opposite conclusions upon the issue might be drawn by reasonable men, we think that the court below erred in pronouncing Mrs. Maher's conduct negligent as a matter of law.

We hold that under the circumstances of this case the issue of contributory negligence was one for the jury.

2. *Was there sufficient evidence to go to the jury on the issue of defendants' negligence?*

Defendants argue that even if Mrs. Maher is not to be held contributorily negligent as a matter of law yet the judgment below must be affirmed, since the evidence was insufficient to establish negligence. Its alleged insufficiency is especially urged as to Dr. Voss. We do not reach this question in the breadth in which it is presented, because it was not raised below. At the conclusion of plaintiffs' case defendants' counsel moved "for a

directed verdict in favor of the defendants." Apparently referring to a memorandum which he was about to hand to the court he stated "the principal reasons in support of this motion" as follows:

"First, Your Honor will be cognizant of the fact that there is no claim, no claim has been advanced that there was any defect in the premises of any kind.

"Secondly, the only possible grounds upon which negligence could be claimed or could be sustained was on the theory of a trap. The authorities here are all to the effect that a situation, that an ordinary cellar door which I submit to Your Honor it is not at all unusual for people to hang clothes inside a cellar door.

"The third or the last and principal reasons—there are some others here—is that the plaintiff, Anne Maher, was obviously guilty of contributory negligence."

The second reason is the only one which might be said to raise any question of the insufficiency of plaintiffs' evidence. It is clear, however, that it could raise nothing more than the sufficiency of the plaintiffs' evidence to establish a "trap" or dangerous condition upon the defendants' premises—only one of the elements of the negligence charged. As to this, the motion was not phrased with "technical precision", but that is not required. 2 *Baron & Holtzoff, Fed. Prac. & Proc.*, § 1073. That one narrow issue, i. e., whether there was evidence tending to show a dangerous condition, was sufficiently raised by defendants and we accordingly review the record for the purpose of determining it. To that end we state first the general principles of law applicable to the case.

The first question to be resolved is the status of Mrs. Maher upon the defendants' premises, since the law makes a distinction, in respect of the measures of liability of an occupant of land, between "business visitors" and "gratuitous licensees". *Restatement, Torts, Ch.* 13 §§ 331-332.

On the motion to dismiss the complaints the court below held that Mrs. Maher was simply a social guest, and as

such, a gratuitous licensee. 84 *A.* 2d 527, 528. We approve this finding. Indeed it is not seriously challenged by plaintiffs.

The next question to consider is the extent of liability of the possessor of premises to a social guest.

■ By the great weight of authority a gratuitous licensee must take the premises as he finds them, and the owner or occupant of land owes him no duty except (a) not to injure him willfully or wantonly and (b) not knowingly to expose him to traps or hidden dangers. 38 *Am. Jur., Negligence,* § 104. *Cf. Reardon v. Exchange Furniture Stores,* 7 *W. W. Harr.* (37 *Del.*) 332, 188 *A.* 704. If there is negligence in the instant case it must fall within the latter exception.

■ The applicable principles are set forth in the *Restatement, Torts, Ch.* 13, § 342, as follows:

"A possessor of land is subject to liability for bodily harm caused to gratuitous licensees by a natural or artificial condition thereon if, but only if, he

"(a) knows of the condition and realizes that it involves an unreasonable risk to them and has reason to believe that they will not discover the condition or realize the risk, and

"(b) invites or permits them to enter or remain upon the land, without exercising reasonable care .

"(i) to make the condition reasonably safe, or

"(ii) to warn them of the condition and the risk involved therein."

Comment f. of the Restatement says:

"* * * In determining whether the possessor should realize that a known condition involves not only a risk but an unreasonable risk, the character of the invitation or permission is important. A condition, no matter how dangerous to those who come in contact with it, can involve risk to a particular licensee only if he may be expected to encounter it in the exercise of his

license. * * * So too, a possessor has no reason to expect the licensee's presence at any point other than that within which the licensee gives him the privilege to enter. He is, therefore, under no duty to warn licensees of conditions which exist outside of the area covered by the license."

Applying these principles, we inquire: Was there evidence of a dangerous condition upon the premises of Dr. and Mrs. Voss?

We think that in the circumstances of this case a jury question was presented on the issue of a dangerous condition. The hanging of wraps immediately above a short platform leading to an unlighted cellar stairway presents some evidence of a condition involving serious risk to any visitor who, without knowledge of the condition, may be expected to go to such a place to retrieve his hat or coat. We think the jury might have found from the evidence adduced that a dangerous condition existed, hazardous to a guest who was invited to go to the place, apparently a coat closet, for the purpose of retrieving his wraps.

It follows that the second reason in support of defendants' motion for a directed verdict was not well taken.

But as above indicated this finding does not dispose of the case, since there remains the question whether there was evidence from which could be found a duty on the part of the defendants, or of either of them, to warn the guests of the condition. This question was not raised by the motion. The failure to do so is of importance. Rule 50(a) of the *Rules of the Superior Court*, like the *Federal Rule of Civil Procedure*, 28 *U. S. C. A.*, from which it is derived, provides:

"A motion for a directed verdict shall state the specific grounds therefor."

The purpose of the rule is stated in 2 *Barron & Holtzoff, Fed. Prac. & Proc.*, § 1073, as follows:

"Before Rule 50 was adopted, the federal decisions were in conflict as to the necessity for stating specific grounds in a

motion for a directed verdict. Subdivision (a) of this rule settles that conflict. The motion for a directed verdict must now state the 'specific grounds therefor'. The requirement is important. If the rule were otherwise a judgment nothwithstanding the verdict might be entered under Rule 50(b) on motion after the close of the trial, *on a ground which could have met with proof if it had been suggested on the motion*." (Emphasis supplied.)

The pertinency of the italicized language to this case will appear from the following considerations:

 There can be no liability of the possessor of the premises to a social guest if the danger is not on the portion of the premises to which he has been invited. The alleged duty to warn must therefore depend upon the existence of an invitation. In this case it must depend on an invitation implied from circumstances, since no express invitation was extended.

 Whether or not a guest expressly invited to a part of the premises may be said to have been impliedly invited to another part must depend on the circumstances of the case. The rules of social conduct are to some extent uncertain and varying. Moreover, there are different degrees of acquaintanceship or friendship, so that what might be normal and proper conduct for a guest in one case might seem unusual and unwarranted in another case. Whether or not the possessor of the premises has extended to any guest an implied invitation to visit another part of the house would seem to turn upon the question whether or not the circumstances, and the relation between the parties, would justify the guest in assuming that such an implied invitation was extended. If so, it is reasonable to say that the possessor of the premises should have foreseen the likelihood of such a visit.

 In the light of these principles the failure of defendants to raise the question of the sufficiency of the evidence to establish a duty to warn was an omission of real consequence.

If the question now presented to us had been properly raised below, the trial judge would have been required to re-

view the sufficiency of the evidence to establish negligence. But it was not raised as Rule 50 requires, so that we do not have to resolve it. Nor would it be useful to discuss the problem in the present state of the record.

Since we have found error in the ruling on contributory negligence, the judgment below must be reversed. The cause is remanded to the Superior Court of New Castle County, with instructions to vacate the judgment and to grant a new trial.