LINDA ESBENSHADE, APPELLANT, V.
NATIONAL LIFE INSURANCE COMPANY,
A CORPORATION, APPELLEE.

303 N.W.2d 272

Filed March 6, 1981. No. 43175.

William Jay Riley of Fitzgerald, Brown, Leahy, Strom, Schorr & Barmettler for appellant.

John R. Douglas and Ronald F. Krause of Cassem, Tierney, Adams, Gotch & Douglas for appellee.

Heard before KRIVOSHA, C.J., BOSLAUGH, McCOWN, CLINTON, BRODKEY, and WHITE, JJ.

Krivosha, C.J.

The appellant, Linda Esbenshade (Ms. Esbenshade), appeals from an order entered by the District Court for Douglas County, Nebraska, sustaining a motion for directed verdict made by the appellee, National Life Insurance Company (National Life), at the close of Ms. Esbenshade's case in chief. We believe that the evidence introduced as a part of Ms. Esbenshade's case in chief raised legitimate questions of fact which should have been submitted to the jury for its determination. We therefore reverse and remand this action for further proceedings.

Ms. Esbenshade and her husband leased an apartment from National Life, which was one of many units located in a multibuilding apartment complex owned by National Life, in Millard, Nebraska. Early in the morning of December 27, 1977, Ms. Esbenshade left her apartment unit, intending to walk to her parked car for the purpose of starting it and "warming it up" in anticipation of using it a little later in the morning.

According to Ms. Esbenshade's version of the facts, she chose what appeared to be the least hazardous route across an open common yard area of the apartment unit maintained by National Life. The area led to the parking lot where her car was located. Her evidence established that as she left her apartment building through the only practical means of ingress and egress, she observed that the sidewalk leading to the parking area was visibly slick with a thin sheet of ice covering most of the walkway.

Ms. Esbenshade's evidence tended to establish that the hazard posed by the ice upon the sidewalk was increased by reason of the fact that a portion of the walk she needed to cross to reach the parking lot consisted of a humped concrete bridge spanning a drainage ditch. The humped span, also covered with ice, had no handrails of any type. After warming up her car,

she returned to her apartment unit, again crossing the interior common yard area of the apartment unit.

National Life, as landlord, maintained all of the sidewalks and the common areas of the apartment unit. As landlord, National Life had also planted a 4-foot-high pine tree in the yard area near the sidewalk directly between the entrance of Ms. Esbenshade's apartment building and the parking lot. Attached to the tree were wires that extended 2½ to 3 feet beyond the end of the pine tree branches. The wires were attached to stakes in the ground. The wires were not flagged or in any other way marked or identified, and residents were not otherwise warned about the presence of the wires except to the extent that they might actually have seen them on previous occasions.

In returning to her apartment unit from the parking lot, Ms. Esbenshade fell over one of the guy wires, striking her knee and shattering her patella. As a result of her fall, Ms. Esbenshade was forced to undergo surgery, resulting in the removal of her kneecap. In addition to the loss of her kneecap, she suffered pain, actual loss of wages, and incurred medical expenses.

Ms. Esbenshade maintained that she was unaware of the presence of the guy wires and did not see them on the morning in question because of the absence of adequate light, either natural or artificial. As we have already indicated, the trial court sustained the motion for a directed verdict made by National Life following Ms. Esbenshade's case in chief, and dismissed her petition.

Ms. Esbenshade claims that the issues raised by her evidence involved questions of fact so that the trial court erred in sustaining the motion for directed verdict. The determination of that question depends, in part, upon certain rules heretofore announced by us in reviewing the granting of a directed verdict.

In the recent case of *Foremost Ins. Co. v. Allied*

*Financial Services, Inc.*, 205 Neb. 153, 158, 286 N.W.2d 740, 744 (1980), we said: "It is well settled law in this state that the party against whom a verdict is directed is entitled to have every controverted fact resolved in his favor and to have the benefit of every inference that can reasonably be deduced from the evidence. It is only when the facts are conceded, undisputed, or are such that reasonable minds can draw but one conclusion therefrom that the trial court must decide the question as a matter of law and not submit it to a jury. [Citations omitted.] It is also the rule that to justify the direction of a verdict, it is not necessary that there should be literally no evidence to go to the jury, it being sufficient that there is none that ought reasonably to satisfy the jury that the fact sought to be proved is established." (Emphasis omitted.) Likewise, in *Taylor v. J. M. McDonald Co.*, 156 Neb. 437, 440, 56 N.W.2d 610, 612 (1953), we said: "[W]here different minds may reasonably draw different conclusions from the evidence as to whether or not they establish negligence, the issues are for the jury." In *Hickman v. Parks Construction Co.*, 162 Neb. 461, 470, 76 N.W.2d 403, 410 (1956), we said: "It is a well-established rule that if there is any evidence which will sustain a finding for the litigant having the burden of proof in a cause the trial court may not disregard it and decide the case as a matter of law." And we noted in *Presho v. J. M. McDonald Co.*, 181 Neb. 840, 844, 151 N.W.2d 451, 455 (1967): "[N]egligence and a duty to use due care does not exist in the abstract, but must be considered against the particular set of facts and circumstances."

The first question which we must therefore address in reviewing the action of the trial court in this case is whether the evidence presented by Ms. Esbenshade, viewed most favorably in support of her position, is such that reasonable minds could reach only the conclusion that National Life was not in any manner negligent or that Ms. Esbenshade was so contributorily

negligent as to bar her recovery as a matter of law. For, if reasonable minds can dispute about the conclusion to be reached in this case, a directed verdict would be inappropriate.

The rules of law concerning the liability of a landlord in this case are relatively clear, though the application of the rules have consistently given us difficulty. Restatement (Second) of Torts § 342 (1965) provides: "A possessor of land is subject to liability for physical harm caused to licensees by a condition on the land if, but only if, (a) the possessor knows or has reason to know of the condition and should realize that it involves an unreasonable risk of harm to such licensees, and should expect that they will not discover or realize the danger, and (b) he fails to exercise reasonable care to make the condition safe, or to warn the licensees of the condition and the risk involved, and (c) the licensees do not know or have reason to know of the condition and the risk involved."

Our holdings have generally been in accord with Restatement's position. In *Markussen v. Mengedoht*, 132 Neb. 472, 475, 272 N.W. 241, 243 (1937), we acknowledged the Restatement rule, saying: "[T]he owner, who reserves a portion of the demised premises for the common use of all the tenants, is required to keep the portion so reserved in a reasonably safe condition . . . ." And, again, in *Schwab v. Allou Corp.*, 177 Neb. 342, 347, 128 N.W.2d 835, 839 (1964), we said: "'[A] lessor is bound to exercise reasonable care in keeping premises used in connection with but not demised to the lessee reasonably safe for those having lawful occasion to use them for the purpose for which they were intended.'"

An examination of a series of cases decided by this court discloses that evidence similar to the type presented to the trial court in this case has led this court to conclude that questions of fact were, indeed, raised which should have been submitted to the jury. In *Swiler v. Baker's Super Market, Inc.*, 203 Neb. 183, 277 N.W.2d

697 (1979), we were asked to review a case involving a plaintiff who tripped upon a floormat and fell in the defendant's store while there to make a purchase. In concluding that a question of fact was raised, we said at 185-86, 277 N.W.2d 699-700: "In determining the question of whether the evidence is sufficient to submit the issues of negligence and contributory negligence to the jury, a party is entitled to have all conflicts in the evidence resolved in her favor and the benefit of every reasonable inference that may be deduced from the evidence, and if reasonable minds might draw different conclusions from a set of facts thus resolved in favor of a party, the issues of negligence and contributory negligence are for the jury. Pearson v. Richard, 201 Neb. 621, 271 N.W.2d 326. This court said in the Pearson case that: 'Negligence is a question of fact and may be proven by circumstantial evidence and physical facts.'"

In *Taylor v. J. M. McDonald Co.*, 156 Neb. 437, 56 N.W.2d 610 (1953), we determined that it was a question of fact whether the defendant store was negligent in permitting gum to remain on the store floor, thereby causing the plaintiff to catch her heel and fall to the floor.

In *Hickman v. Parks Construction Co.*, 162 Neb. 461, 76 N.W.2d 403 (1956), we held that it was a question of fact to be determined by the jury as to whether the defendant construction company was negligent in leaving an excavation in such condition that the plaintiff, while attempting to cross the parking lot to his automobile, fell into the excavation.

In *Schwab v. Allou Corp.*, *supra*, we held that it was a question of fact as to whether the landlord was negligent in failing to remove the ice from the front porch and the plaintiff contributorily negligent in walking across the ice when there was no other means of ingress or egress.

In *Crosswhite v. City of Lincoln*, 185 Neb. 331, 175 N.W.2d 908 (1970), we held it to be a question of fact

to be determined by the jury as to whether the city and the abutting property owner were negligent in permitting a water stop box to remain elevated above the sidewalk, thereby causing the plaintiff to trip over the stop box when attempting to cross the sidewalk.

And in *Tempel v. Proffitt*, 122 Neb. 249, 240 N.W. 285 (1932), we held it was a question of fact to be determined by the jury as to whether defendant-landlord was negligent in maintaining certain stairs upon which the plaintiff fell.

To be sure, the landlord may not always be held liable. The landlord is not liable to a tenant for injuries sustained in a common area where the danger is inherent and the conditions complained of are open, obvious, and apparent to the injured party. See, *Good v. Jones*, 184 Neb. 454, 168 N.W.2d 520 (1969); *Crawford v. Soennichsen*, 175 Neb. 87, 120 N.W.2d 578 (1963); *Whitcomb v. State Fed. Sav. & Loan Assn.*, 190 Neb. 26, 205 N.W.2d 652 (1973).

We need not, however, and, in fact, do not, find by our decision herein that National Life was in fact negligent in any respect. That conclusion, being a question of fact under the circumstances, we leave for the triers of fact — the jury. We only decide here either that National Life was not wholly free of negligence as a matter of law or that Ms. Esbenshade was not guilty of contributory negligence sufficient to bar recovery as a matter of law. Therefore, National Life was not entitled to a directed verdict. Our conclusion reached herein is clearly required under the law and the facts presented.

Whether National Life exercised the ordinary care required of a landlord when extending the guy wires several feet beyond the tree must of necessity be a question of fact. The answer to that question depends upon the view which the jury takes of the evidence offered by Ms. Esbenshade. Did she know of the presence of the wire? She maintains she did not.

Did National Life know that persons, including tenants, used the common area to walk upon and to get to their cars? Ms. Esbenshade maintains it did. Could the wire be seen either day or night without other warnings being given by National Life or other steps taken by it to protect users of the common area, including the tenants? Ms. Esbenshade maintains that the light was insufficient. The jury might conclude to the contrary. That is not, however, a question of law but, rather, a question of fact.

National Life argues that no reasonable mind could reach a conclusion that National Life was negligent under the facts and the law in this case. We do not believe that to be true. As we have noted earlier in our opinion, reasonable minds have reached contrary views as noted in the cases cited herein.

Likewise, other jurisdictions which have reviewed actions of this very type have concluded that reasonable minds might reach contrary conclusions as to the facts of the matter, thereby making the action properly one which should be submitted to a jury for their determination.

In the case of *Blaustein v. Levitt*, 24 App. Div. 2d 862, 264 N.Y.S.2d 318 (1965), the Supreme Court of New York, Appellate Division, Second Department, was asked to rule upon an action brought by the plaintiff to recover damages for personal injury sustained by the plaintiff when he attempted to cross a 6-foot-wide island situated between the place in the parking lot where he had parked his car and the entrance to the apartment house owned by defendant, in which house plaintiff was a tenant.

In affirming the judgment of the jury finding for the plaintiff-tenant and against the defendant-landlord, the court said at 862, 264 N.Y.S.2d at 319: "Planted in the center of the 'island' was a young tree about 4 or 5 feet high from which a wire was stretched from a height of 2½ to 3 feet to a peg about 2 or 2½ feet away. In attempting to cross the island, plaintiff

tripped on the wire, which was invisible to him on this rainy night in this unlighted area. The jury could find that defendant had the duty to anticipate that a person parking his car in the parking area would attempt to get to the entrance of the apartment house in which he was a tenant directly from the parking lot on the far side of the island, rather than to go around the island [citation omitted]. Contributory negligence was a question of fact."

Likewise, in *Laufer v. Long Island Lighting Co.*, 61 App. Div. 2d 977, 402 N.Y.S.2d 611 (1978), the same court was asked to review a negligence action to recover damages for personal injury resulting when the plaintiff fell over a guy wire extending from a telephone pole. The New York court said at 977-78, 402 N.Y.S.2d at 612: "The New York Telephone Company erected a telephone pole in the grassy area between a concrete sidewalk and the curb. It attached a cable guy wire to the pole and, in order to stabilize the pole, anchored the guy wire in the grassy area. During the evening of May 4, 1976, plaintiff and three friends attempted to cross the street in the middle of the block. Plaintiff was apparently speaking with and looking at one of his friends when he tripped over the guy wire. He testified at the trial that he did not realize what he had tripped over until he had gotten up from the ground and looked about. Plaintiff and Kevin Valentine testified that it had been very dark at the time of the accident. Only the middle of the street had been illuminated; the guy wire was not visible. . . . In view of the darkness and the dark color of the guy wire, it would have been difficult for plaintiff to ascertain the cause of his fall, while falling. Under the circumstances, only when he had gotten up and searched for the cause of the accident could plaintiff have determined what had made him fall. Had he observed the wire before the accident, and yet fallen over it, a jury might have found that his own negligence had proximately caused the accident. There was no

testimony as to the presence of any other object at the location. A jury could find that plaintiff did not trip over the curb, as the guy wire obstructed the path to the street; plaintiff would have had to pass the guy wire before reaching the curb. Plaintiff's testimony as to having tripped over something may exclude the possibility of his having fallen over his own two feet. We find that plaintiff made out a prima facie case. The questions of fact should be decided by a jury . . . ."

And in the case of *Jablonski v. City of Bay City*, 248 Mich. 306, 226 N.W. 865 (1929), the Michigan Supreme Court held that it was a question of fact as to whether the city was negligent in placing a wire along the edge of a sidewalk over which the plaintiff tripped. In so holding the Michigan Supreme Court said at 310-12, 226 N.W. at 866-67: "Such departure from the sidewalk is not negligence *per se* in the individual, nor does it relieve the city of the duty to keep its streets in proper condition for travel at the places where people may reasonably be expected probably to walk.

. . . .

"The essential question is whether the guard is a reasonable one. . . . [A]nd the question of whether it was a proper guard or a dangerous instrumentality resulting in a breach of the statutory duty of the city would be for a jury."

In view of all of these cases brought to our attention, we are unable to see how we can conclude that reasonable minds could reach but one conclusion under the facts in this case. We must, therefore, conclude that reasonable minds could differ under the circumstances. Reaching that conclusion, we must, likewise, acknowledge that there were legitimate questions of fact which should have been presented to a jury under proper instructions at the proper time, thereby making the sustaining of a motion for directed verdict improper.

What we have said concerning the issue of National Life's alleged negligence can likewise be said about

Ms. Esbenshade's alleged contributory negligence. Does the evidence establish that Ms. Esbenshade did not use "ordinary care" for her own safety? Did she know about the presence of the guy wire and could she have seen the guy wire before she fell over it? Did she place herself in a dangerous position when other, more reasonable and less dangerous alternatives were available? We cannot answer those questions as a matter of law. They might reasonably be decided either way by reasonable minds. The answer to those questions under the evidence must, therefore, be questions of fact to be decided by the jury.

We therefore reverse the action of the trial court in dismissing plaintiff's petition, and remand for further proceedings in accordance with this opinion.
REVERSED AND REMANDED WITH DIRECTIONS.

McCOWN, J., concurs in result.

CLINTON, J., dissents.

BOSLAUGH, J., dissenting.

According to the majority opinion, the evidence in this case would sustain a finding that the defendant had created a condition involving unreasonable risk of harm to the plaintiff and the plaintiff did not know or have reason to know of the condition and risk of harm.

The evidence is that the tree had been planted 1 to 5 months before the accident and the plaintiff had walked past it many times. In her deposition, the plaintiff testified that at one time or another she had "probably noticed" or "observed" the wires and stakes supporting the tree. There was nothing concealed or hidden about the wires and stakes, although the wires would not be easily seen when it was dark.

The majority opinion relies upon Nebraska cases involving dangerous conditions on floors in grocery and department stores; stairways and porches of apartment houses; excavations in parking lots; and elevated

stop boxes in sidewalks. It should be readily apparent that none of these cases has any application to the facts in this case.