CHARLYNE WEISS, APPELLEE, V. AUTUMN HILLS INVESTMENT CO., A JOINT VENTURE, APPELLANT.

395 N.W.2d 481

Filed October 24, 1986.   No. 85-221.

Milton A. Katskee of Katskee & Henatsch, for appellant.

Robert V. Roach of Welsh, Sibbernsen & Roach, for appellee.

KRIVOSHA, C.J., BOSLAUGH, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

GRANT, J.

Plaintiff-appellee, Charlyne Weiss, brought this action against defendant-appellant, Autumn Hills Investment Co., a joint venture (Autumn Hills), for personal injuries sustained by her on November 1, 1977, when she fell while walking across a grassy area adjoining the patio of the garden-level apartment plaintiff rented from Autumn Hills. After trial the jury returned a verdict in favor of plaintiff in the sum of $231,000.

Autumn Hills duly appealed to this court, alleging that the trial court erred in overruling Autumn Hills' motions for directed verdict, in that there was not sufficient evidence to sustain a verdict for plaintiff and in allowing two medical witnesses to testify and render opinions on the cause of plaintiff's injury. Autumn Hills further alleges that the damages were excessive and "appear to have been given under the influence of passion and prejudice." We affirm.

With regard to the trial court's alleged error in failing to direct a verdict in favor of Autumn Hills, we stated in *Sierks v. Delk*, 222 Neb. 360, 363, 383 N.W.2d 778, 779 (1986):

The standard governing a trial judge in assessing a motion for a directed verdict is well established. The judge must resolve every controverted fact in favor of the party against whom the verdict is sought, and must also give that party the benefit of every reasonable inference that can be drawn from the facts in evidence. If there is any evidence which will sustain a finding for the party against whom the motion is made, the case may not be decided as a matter of law. *Kahrhoff v. Kohl*, 219 Neb. 742, 366 N.W.2d 128 (1985). In addition, the court should direct a verdict only when facts are conceded, undisputed, or such that reasonable minds could draw but one conclusion from them. *Krug v. Laughlin*, 208 Neb. 367, 303 N.W.2d 311

(1981).

Evidence adduced at the trial showed the following. Mrs. Weiss, age 54 at trial, had a long history of back problems. She first suffered an injury to her back in a fall at her home in Dallas, Texas, in January of 1967. As a result of the fall, she suffered a herniated disk in her lower back between the sacrum and the lumbar vertebrae. Surgery was performed to remove a disk at the S1 level. On August 14, 1967, a second surgery to remove the disk at the lowest lumbar vertebral level, and to do a fusion, was performed in connection with that initial back injury. On February 9, 1975, after plaintiff had moved to Chicago, Illinois, a medical procedure requiring a chemical injection to dissolve another disk in her back was performed on her lower back at the fourth lumbar vertebral level.

Plaintiff moved to Omaha, Nebraska, on August 14, 1975. Mrs. Weiss experienced two falls between the beginning of 1975 and April of 1977. On June 9, 1977, Mrs. Weiss underwent back surgery in Chicago, Illinois, to correct the fusion performed August 14, 1967, and to remove what remained of the disk at L4 after the chemical injection performed February 9, 1975, proved ineffective. After plaintiff was released from the Chicago hospital and returned to Omaha at the end of June 1977, plaintiff was pushed against a wall by her son. Plaintiff experienced pain in her throat, left chest, ribs, and in her lower back, with pain radiating into her legs. She was checked at a hospital and released. The only medical problem from this incident was that the surgical incision bled for a time.

In late summer and early fall of 1977, Mrs. Weiss was recovering. She was sleeping without sedatives and doing housework without pain. The pain in her legs had subsided. According to her personal treating physician, Dr. Dunn, an internal medicine specialist in Omaha, Nebraska, in October of 1977 plaintiff was not experiencing any lower back pain and no pain resulting from her condition prior to the June 1977 operation.

On August 25, 1977, plaintiff moved into an apartment in a complex owned by Autumn Hills. Her apartment was a garden-level apartment with a patio door opening onto a large grassy area. There was no sidewalk from the patio of her

apartment to the sidewalk which ran around the perimeter of the grassy area. The sidewalk provided passage to the various buildings in the complex that faced upon it.

When plaintiff moved into her apartment, there was an exterior lighting system which lighted the entire large grassy area, making the whole area, as plaintiff testified, "as light as day." Autumn Hills became the owners of the complex in August of 1977. On October 31, 1977, the Omaha Public Power District removed its poles and lights illuminating the grassy area and the sidewalk because Autumn Hills had not paid the bill for that service.

Tenants in the apartments had regularly used the grassy area for foot travel. From the time that she moved into the apartment, Mrs. Weiss regularly entered and left her apartment through the ground-level door on her patio. When the patio door was used as an entrance to the apartment, the grassy area was used as a walkway. The grassy area was eroded and rutted in places because two ground-level gutters, located at the ends of two connecting patios (plaintiff's and the next apartment's) discharged water over the area. On October 31, 1977, after the outdoor lights had been removed, plaintiff talked with one of defendant's employees. This employee informed plaintiff of the nonpayment of the electrical bill. He also, at that time, was adjusting the downspouts which drained over the grassy area, so that children playing could not disrupt them. In addition, the grass was not regularly mowed, and the area was covered with weeds.

On the evening of November 1, 1977, plaintiff had arranged to talk to one of her daughters in Texas. Since she did not have a telephone in her apartment, plaintiff was walking to the clubhouse building where there was a telephone. She testified that she had to go across the grassy area because each of the alternate routes available to her required a stair climb. Plaintiff testified that her doctor had told her not to climb stairs. In addition, there were no railings on the steps in one portion of this route.

Plaintiff, assisted by her daughter, walked across the grassy area toward the sidewalk to the clubhouse. As she started to walk westward on the night in question, the area was

illuminated for a short distance by the lighting from her own apartment and by the lighting from the next apartment. The area beyond the apartment lights was not illuminated at all because of the removal the day before of the exterior lights and poles. When plaintiff reached the area that was not illuminated by the two apartments, she began to walk directly north toward the sidewalk. Within a short distance after turning that direction, plaintiff fell when she stepped in a rut in the ground which was obscured by weeds. As she fell, plaintiff dragged her daughter to the ground with her.

Two physicians who treated plaintiff in Omaha were called as witnesses by the plaintiff, as was Dr. Kane, an orthopedic surgeon in Chicago, who testified by deposition. Dr. Dunn, an internist, first saw plaintiff in April of 1976, and Dr. Agarwal, an orthopedic surgeon, first saw her in September of 1976. Both of the Omaha doctors noted that prior to November 1, 1977, all of Mrs. Weiss' medical problems connected with her back were lower back problems. After November 1, 1977, she began to present upper back problems. This new area of pain indicated to them a new problem.

After this fall of November 1, 1977, plaintiff again fell on January 15, 1978, and injured her knee. The knee injury resulted in a tearing of the medial collateral ligament and required surgical repair. Dr. Agarwal testified as to plaintiff's complaints of back pain after this surgery.

Plaintiff was hospitalized on January 8, 1979, for further testing. A myelogram taken at that time by Dr. Agarwal showed a disk injury in plaintiff's spine at the "thoracic/lumbar junction, T-12 and L-1."

In February of 1979 Drs. Agarwal and McKinney performed surgery on plaintiff, in the form of a laminectomy, and removed a herniated disk from the T12-L1 disk area. Both Dr. Dunn and Dr. Agarwal testified, with a reasonable degree of medical certainty, that the fall on November 1, 1977, had caused Mrs. Weiss' upper back problems and had aggravated her preexisting lower back problems. Dr. Dunn testified:

> Q. [Plaintiff's attorney] Doctor, with respect to her lumbar spine and thoracic spine problems, muscle spasms, leg problems, is there a specific incident that you

can state with a reasonable degree of medical certainty that you believe is the cause?

. . . .

Q. . . . Do you have an opinion?

A. It is my opinion — I formed this from my observations, also discussions with other physicians involved — that as she was asymptomatic prior to November 1st, that the fall on that date was the inciting instance or the injury that has subsequently caused her problems.

Dr. Agarwal testified, with a reasonable degree of medical certainty, that plaintiff's November 1 fall caused her thoracic spine injury. He also stated that the prior lower back problems contributed to the problems of the injury of November 1, 1977. Both physicians testified as to knowledge of several falls plaintiff experienced both before and after her fall of November 1, 1977. Both physicians explained in detail their opinion that, despite plaintiff's various falls, the November 1, 1977, fall was in fact the cause of her thoracic back problems and the aggravation of her lower back problems.

As stated, Mrs. Weiss was 54 years old at the time of trial. Her life expectancy was 25.73 years. Her doctors testified that she will experience chronic pain for the rest of her life. The management of this pain, and the associated medical problems, will require at least four doctor visits a year and will involve an extensive need for pharmaceuticals at an estimated cost of $1,700 a year.

As a result of her injury, she suffered a large herniated disk at the T12-L1 level. It required two surgical procedures to partially alleviate this difficulty.

Our review of the facts shows that the trial judge was correct in overruling Autumn Hills' motions for directed verdict. There was sufficient evidence to support the jury's verdict for plaintiff. No error is alleged in the reception of evidence during the trial nor as to the instructions given by the court. There was evidence (1) that the area where Mrs. Weiss fell was used by many people, thereby making it a common area; (2) that the area where she fell was unsafe due to ruts caused by erosion from water captured by Autumn Hills and released by it in a

specific manner and in a specific place; (3) that the area where she fell was not marked as an unsafe area; (4) that the area was not illuminated at the time of the accident, although it had been illuminated until the day before her fall; (5) that she stepped in a rut covered by weeds and fell to the ground; and (6) that she sustained damages including medical bills, and damages from physical pain and suffering which was not in existence immediately prior to the fall.

Conflicting evidence also was adduced, primarily through the cross-examination of plaintiff and plaintiff's witnesses. Plaintiff's evidence was not sufficiently rebutted on cross-examination of witnesses or by Autumn Hills' evidence to allow a directed verdict. Questions of fact were presented.

The matter was submitted to the jury on plaintiff's theories that Autumn Hills was negligent in failing to exercise reasonable care in maintaining in a safe condition the area where plaintiff fell and in failing to warn plaintiff of a dangerous condition in the area, and on defendant's denial of any negligence and its contention that plaintiff was contributorily negligent and had assumed the risk. The trial court instructed the jury as to the duty of a landlord, such as Autumn Hills, in keeping common areas of leased premises safe for the use of tenants who act in a manner free from contributory negligence.

We stated in *Schwab v. Allou Corp.*, 177 Neb. 342, 349, 128 N.W.2d 835, 840 (1964):

> The doctrine by which the landlord is held responsible for exercise of reasonable care to keep in a reasonably safe condition common passageways in leased premises over which he has retained possession and control applies and extends to the duty of removing ice or snow where he has assumed such duty under circumstances on which the tenants have a right to rely on its performance.

In *Esbenshade v. National Life Ins. Co.*, 208 Neb. 216, 303 N.W.2d 272 (1981), we held it was a question of fact whether a landlord was guilty of negligence ·in extending guy wires supporting a newly planted tree several feet beyond the tree planted in the common area of the apartment building, where a tenant tripped over the wire while walking to her car. As stated

in *Esbenshade, supra* at 218, 303 N.W.2d at 274, the facts showed that "Mrs. Esbenshade maintained that she was unaware of the presence of the guy wires and did not see them on the morning in question because of the absence of adequate light, either natural or artificial."

In the instant case the grassy common area was eroded and uneven because of water drainage, and therefore dangerous for those walking there. While plaintiff knew generally about the condition of the grassy area, she could not see the specific dangers because of the weed covering and the absence of the usual exterior lighting. There was sufficient evidence to present a fact question both as to the negligence of Autumn Hills and as to the contributory negligence of plaintiff. The trial court was correct in refusing to direct a verdict for Autumn Hills.

The second issue raised by Autumn Hills is whether there was sufficient evidence to sustain the verdict and the judgment. "A jury verdict will not be disturbed on appeal unless it is clearly wrong." *Poppe v. Petersen*, 221 Neb. 877, 884, 381 N.W.2d 534, 538 (1986). There was sufficient competent evidence, as set out above, upon which the jury could find for plaintiff. *Vacek v. Ames*, 221 Neb. 333, 377 N.W.2d 86 (1985). As stated above, a question of fact existed on which reasonable persons could differ. There was sufficient evidence to support a verdict for plaintiff.

Autumn Hills also assigns as error the trial court's ruling allowing two of plaintiff's doctors to testify as to the cause of her injury. Autumn Hills contends it was error to permit Drs. Dunn and Agarwal to give their "opinions on causation for which there was a lack of proper and sufficient foundation." Each doctor was fully qualified in his particular field of expertise. No medical testimony was adduced by Autumn Hills contradicting the testimony of any of the doctors called to testify by plaintiff.

Autumn Hills argues in its brief that there were other falls which explain causation, particularly when the diagnosis of the injury was made approximately 14 months after the fall in question. This raises a question of fact, based on defendant's cross-examination of plaintiff's doctors. Autumn Hills presented no other evidence. The doctors' opinions were

properly admitted and constituted evidence that the jury could choose to either believe or disbelieve.

With regard to whether the doctors' testimony was properly admitted, we note that "a trial court's ruling in receiving or excluding expert testimony will be reversed only when there has been an abuse of discretion." *Aetna Cas. & Surety Co. v. Nielsen*, 222 Neb. 92, 93, 382 N.W.2d 328, 329 (1986).

Reviewing the record as a whole, we cannot say that the trial judge abused his discretion in allowing the doctors to testify. There was proper and sufficient foundation for the doctors to state their medical opinions as to the cause of plaintiff's injury which they treated as her physicians.

The remaining assignment of error is that the damages were excessive. Autumn Hills does not, in its brief, present any specific reasons in contending that the damages are excessive, and does not review the evidence on damages to establish the contention that the damages were excessive. Autumn Hills merely reiterates its contentions that the evidence was insufficient, and alleges as a conclusion that the damages are excessive.

A brief review of evidence shows that Drs. Dunn, Agarwal, and McKinney provided medical services to plaintiff of a value of approximately $9,000 in their treatment of plaintiff's injuries received in the fall in question. Medical testimony attributed 80 percent of $1,970.70 in hospital charges by Archbishop Bergan Mercy Hospital to the fall. Substantial prescription medication was furnished by various pharmacies. Dr. Dunn testified that future medical expenses for medication would be approximately $1,700 per year, and Dr. Agarwal testified that future medical treatment would be necessary. The record establishes that plaintiff has a life expectancy of 25.73 years. There was substantial evidence as to the nature and extent of plaintiff's injury, as to her disability, as to her pain and suffering, and as to her medical expenses—all as experienced up to the date of trial and reasonably certain to be experienced in the future. The jury was properly instructed on those elements of damages, and no complaint is made as to those instructions. We do not find that the damages awarded plaintiff were excessive. The judgment is affirmed.

AFFIRMED.

WHITE, J., participating on briefs.

CAPORALE, J., dissenting.

I respectfully dissent because, in my view, a proper application of this jurisdiction's prior decisions to the facts of this case required the trial court to dismiss plaintiff's action at the close of all the evidence, as requested by the defendant.

Neb. Rev. Stat. § 25-21,185 (Reissue 1985) bars a plaintiff from recovery if, upon a comparison of the plaintiff's negligence with that of the defendant, the defendant was guilty of less than gross negligence and the plaintiff was guilty of more than slight negligence. I recognize the statute also provides that all questions of negligence and contributory negligence shall be for the jury. This court has held, however, that where the evidence shows that plaintiff's negligence is more than slight as a matter of law, plaintiff's action should be dismissed or a verdict directed in favor of the defendant. *Lyon v. Paulsen Building & Supply, Inc.*, 183 Neb. 365, 160 N.W.2d 191 (1968); *Kirchner v. Gast*, 169 Neb. 404, 100 N.W.2d 65 (1959).

In deciding whether a plaintiff was negligent in walking on dark, exterior premises, it is proper to consider all the circumstances of each case, including the nature of the premises, any necessity for walking on the premises, the availability of alternative routes, the plaintiff's familiarity or lack of familiarity with the premises, the extent to which others had used and were using the premises when the injury occurred, any warnings of danger, the plaintiff's ability to obtain means of lighting the way, the nature and degree of darkness, and the precautions taken by the plaintiff. Annot., Premises Liability: Proceeding in the Dark Across Exterior Premises as Contributory Negligence, 23 A.L.R.3d 441 (1969).

This court has considered those factors in a variety of contexts. In *Gardner v. Metropolitan Utilities District*, 134 Neb. 163, 278 N.W. 137 (1938), a plaintiff carrying groceries into her pantry fell through a trapdoor and into the cellar. This court found that "[h]er negligence in stepping into the darkened room, where she well knew that the floor was a trapdoor regularly opened upon the cellar steps, was more than slight negligence and defeated her recovery." *Id.* at 165-66, 278 N.W. at 138.

In *Wentink v. Traphagen*, 138 Neb. 41, 291 N.W. 884 (1940), the plaintiff had never been in the dark basement before and thus struck two matches to light his way. The matches went out, and plaintiff, instead of returning for more matches or another light source, continued walking in the basement. He fell into a pit and was seriously injured. In affirming the trial court, which had dismissed plaintiff's case at the close of all the evidence, this court found significant the facts that plaintiff had never been in the basement before and that there was no emergency, peril, or need for speed requiring the plaintiff to go forward.

In *Lepley v. Von Dorn*, 139 Neb. 410, 297 N.W. 642 (1941), this court relied upon *Wentink v. Traphagen* and affirmed the trial court's determination that a plaintiff was sufficiently contributorily negligent to bar her recovery as a matter of law when she injured herself by falling from a step of a dark and unfamiliar bathroom. The court set out the facts and the inescapable conclusion:

> This situation is presented. A woman, her eyes adjusted to the bright light of the bathroom, turned out that light and opened the door into the hall where the light was less brilliant than it had been in the bathroom. Knowing that the step was there, but forgetting about it, she stepped from the dark bathroom into the hall and fell, to her injury. Whether she slipped on the sill, lost her balance as a result of the lower elevation of the hall floor, or just what happened is left to speculation and conjecture. Obviously Mrs. Johnson, at the moment before she stepped into the hallway, had three courses open to her,—she could wait until her eyes became adjusted to the light before proceeding; she could have turned on the bathroom light, which, when the door was open, clearly lighted the hall, and determined the nature of the hallway; and she could proceed, forgetful of the step, into what the plaintiff contends was a dark hall and a dangerous situation. She apparently took the last course. The conclusion is inescapable that Mrs. Johnson's own act was the proximate cause of the accident.

*Id.* at 412-13, 297 N.W. at 643.

In *Kelley v. Luke*, 140 Neb. 283, 299 N.W. 593 (1941), a woman entered a dimly lit coffeeshop in which she had never been before. She failed to watch where she was walking and was injured when she fell off a step. This court again cited *Wentink v. Traphagen* and pronounced the conclusion to be "inescapable that the accident was caused by the failure of plaintiff to exercise due care for her own safety." *Id.* at 289, 299 N.W. at 596.

In *Weitz v. United States Trust Co.*, 143 Neb. 703, 10 N.W.2d 623 (1943), plaintiff knew he was entering a semidark room in which there was an elevator shaft. He also knew where the light switches were located but chose not to turn on the lights and fell into the pit. This court concluded plaintiff was "the author of his own injury" and thus affirmed the trial court's finding that plaintiff was contributorily negligent in a degree sufficient to bar his recovery as a matter of law. *Id.* at 710, 10 N.W.2d at 627.

In *Johnson v. Goodier*, 182 Neb. 172, 153 N.W.2d 445 (1967), a guest in an unfamiliar home sought to go to the bathroom; entered a dark and unlighted room; opened the basement door, thinking it was the bathroom door; stepped forward; and fell down the basement stairs. This court, again citing *Wentink v. Traphagen*, concluded that the plaintiff, in walking in darkness in an unfamiliar place, was guilty of negligence sufficient to bar recovery as a matter of law.

In *Leary v. Martin K. Eby Constr. Co., Inc.*, 191 Neb. 575, 216 N.W.2d 750 (1974), a woman left her house during the darkness and walked over a tarpaulin to get her mail. She tripped over a trowel underneath the tarpaulin and was injured. This court held:

> [T]he plaintiff was capable of understanding and discretion, had knowledge of the dangers she was about to encounter, and failed to exercise ordinary care and prudence to avoid the very defects and dangers of which she knew or should have known, and was therefore guilty of contributory negligence as a matter of law.

*Id.* at 578, 216 N.W.2d at 752.

Similar results have been reached by other jurisdictions. See, e.g., *Maher v. Voss*, 48 Del. 45, 98 A.2d 499 (1953); *Yoder v. Greenwald*, 246 So. 2d 148 (Fla. App. 1971); *Conroy v.*

*Kleinman Realty Co.*, 288 Minn. 61, 179 N.W.2d 162 (1970); *Mourning v. Interlachen Country Club*, 280 Minn. 94, 158 N.W.2d 244 (1968); *Posin v. Hotel*, 45 Ohio St. 2d 271, 344 N.E.2d 334 (1976).

The majority opinion not only absolves plaintiff of any responsibility for her own conduct but rewards her indifference to her own safety. I do not know that our society can long survive such a rule of law. I would therefore have applied the rule developed in our earlier cases: that one who, absent especial circumstances requiring him or her to act, proceeds into the dark is guilty of contributory negligence more than slight as a matter of law and thus barred from recovery.

In the case before us, rather than forgo placing a nonemergency phone call scheduled for the dark hours or bear the trauma attendant to an unnecessary climb of stairs, plaintiff elected to risk life and limb by stepping into and traversing an area she knew to be dark and uneven. She was therefore negligent in a degree more than slight as a matter of law and should bear the consequences of her own folly.

BOSLAUGH and HASTINGS, JJ., join in this dissent.