RUBY D. SCHWAB, APPELLEE, V. ALLOU CORPORATION, APPELLANT, IMPLEADED WITH THE BYRON REED COMPANY, INC., APPELLEE.

128 N. W. 2d 835

Filed June 12, 1964. No. 35631.

Kennedy, Holland, DeLacy & Svoboda and David A. Svoboda, for appellant.

Eisenstatt, Lay, Higgins & Miller, for appellee Schwab.

Heard before WHITE, C. J., CARTER, MESSMORE, YEAGER, SPENCER, BOSLAUGH, and BROWER, JJ.

BROWER, J.

The plaintiff, Ruby D. Schwab, brought this action in the district court for Douglas County, Nebraska, against the defendants, Allou Corporation and The Byron Reed Company, Inc., for personal injuries received by her on February 16, 1962, when she fell on an icy stoop or porch at the front entrance of the apartment building owned by the defendant Allou Corporation, and located at 3701 Jones Street in Omaha, Nebraska.

At the trial the action was dismissed as to The Byron Reed Company, Inc., and proceeded against the defendant Allou Corporation as the sole defendant. The trial resulted in a verdict and judgment for the plaintiff in the sum of $11,750. The defendant filed a motion for a judgment notwithstanding the verdict, or in the alternative for a new trial. This motion being overruled, the defendant has brought the cause to this court on appeal.

The remaining parties will be referred to as they were in district court.

The plaintiff and her husband were tenants of one of the apartments in the building and had rented and occupied it for almost a year. There were two apartments on the ground floor and two on the floor above.

The building had a common entranceway with a large cement platform in front of the front door which faced north on Jones Street. It was about 12 feet long next to the building, extended 5 feet out from the door, and was about 1 foot higher than the ground. The Schwab's apartment was to the left or west side of the front door and had a window from which the platform could be seen. A rubber mat was usually kept on the platform in front of the door. A storm door was in front of the outside door and the handle thereof was on one's left, upon leaving the apartment building. The defendant corporation provided Peter Sandberg to maintain the premises and the common areaways in particular.

Ruby Schwab was 68 years of age when she fell. She was employed as a teacher in the Omaha Public School System for more than 13 years. Her husband, Ralph Schwab, was a retired minister.

When the plaintiff left for school on the morning of February 15, 1962, the day before the accident, the platform was free of water. When she returned about 4:30 p.m., there was water upon the platform. She did not know whether she went through it or stepped around it. It would have been a big step. The snow had been thawing that day. There is a slight depression or worn place in front of the door which holds water. When she came home that day there were piles of snow on each side of the platform which she testified had been there for a week at least. The piles were 18 inches high.

On the morning of February 16, 1962, the day of the accident, a taxi had come at 7:30 a.m., to take the plaintiff to work and was waiting in the street in front. The plaintiff observed that the entire platform was icy as she looked through the glass in the door. A photograph of the platform, exhibit No. 2, was submitted in evidence. It has blue marks thereon which the plaintiff testified showed the edge of the snow, indicating it was roughly in a semicircle and that it extended across the front of the porch as well as the sides. Plaintiff testified

that within this semicircle the porch was glare ice though most of the ice was in that portion of the porch which was worn down. The ice extended to the snow and it would be wherever you stepped down. The rubber floor mat had been pushed an inch or two to the east and was frozen in the water. She testified she did not use the rear door of the apartment building because there was more ice there and the taxi service had refused to assure her service from it.

In regard to her actions in leaving the house that morning, she testified: "Well, I opened the door and had to get out to the taxi that was waiting on me, and I took ahold of the door and held to the door as long as I could. There was no hand rail, so I had to hold to the door and I crawled out as carefully as I could. Q. You will have to talk up, I can't hear you. A. I went out as carefully as I could and held to the door and then I let go of the door and started to go north, taking a step, and it was then on that first step that I went down. * * *Q. As to the condition on top of the door mat, what was there? A. Ice—water frozen. Q. You say you held onto the door. Did you have the door open? A. Yes, and I crawled out. I had to, to get out on the walk. Q. What occurred when you let go of the door? A. Well, I had started—when I let go of the door I was ready to take a step and that is when I went down, on the step."

After letting go of the door she fell. Her ankle was severely broken. Her neighbor called the rescue squad and she was taken to the Clarkson Hospital. She had seen snow and ice in front of the door on the stoop many times before, and water freezing and thawing with much of it in the low spot or impression in the cement where it is worn down. The plaintiff had spoken to Sandberg, the janitor, about shoveling the walk but not specifically about the platform.

A neighbor, Ruby Searcy, occupies an apartment across the hall from the plaintiff with a window likewise look-

ing out on the porch. She saw something "flip" on the porch and knew the plaintiff had fallen. Mrs. Searcy is an invalid and rarely leaves the house but she went to the plaintiff's assistance. She testified similarly as to the snow and as to the water freezing and thawing. She said the platform when plaintiff fell was a glare of ice. She had phoned the defendant's agent, the Byron Reed Company, a number of times on other occasions to have the landings and sidewalks taken care of including both the front and back steps. The back steps were icy because of the drain from the house.

Plaintiff's husband was home and asleep at the time of the accident. When told of it, he went out and observed the platform and he testifed as to the ice and snow thereon. He testified that the janitor, Mr. Sandberg, had maintained the walk and landing and he had seen him shoveling snow but he did not scatter sand or salt.

The defendant introduced no evidence.

The errors assigned to the trial court insofar as are necessary to be considered by this court will be referred to as they are discussed.

The defendant urges the trial court erred in not sustaining the motion for judgment notwithstanding the verdict premising its contention on the failure of the trial court to sustain its motion for a directed verdict, or dismissal of the action made at the close of plaintiff's case and of all the evidence. These motions although worded differently may be said to urge that no dangerous condition of a structural aspect or negligence of the defendant which would constitute a cause of action was shown and that the defendant had no notice of any such condition, assuming there was one. Further, that any such condition was open and obvious to the plaintiff; that plaintiff was guilty of contributory negligence more than slight as a matter of law; and that she assumed any risk incident to the use of the platform.

Both the plaintiff and defendant cite the case of Smith v. Rizzuto, 133 Neb. 655, 276 N. W. 406, where the facts

as related by the court were: "Plaintiff further alleges that on January 14, 1934, she slipped upon some ice that had been permitted to accumulate upon a porch of the apartment house because of the negligence of defendant in not keeping the gutters, pipes and spouts on the house in a proper state of repair and resulting in the injuries of which plaintiff complains." This court there stated the applicable law as follows: "Appellee further contends that a landlord is not bound to keep leased property in repair unless he contracts to do so. While this is a proper statement of the general rule, a recognized exception is that a lessor is bound to exercise reasonable care in keeping premises used in connection with but not demised to the lessee reasonably safe for those having lawful occasion to use them for the purpose for which they were intended. Randall v. First Nat. Bank, 102 Neb. 475, 167 N. W. 564; Blotcky v. Gahm, 108 Neb. 275, 187 N. W. 640; Markussen v. Mengedoht, 132 Neb. 472, 272 N. W. 241."

The case of Smith v. Rizzuto, *supra*, although it concerned ice, was a situation where the ice was caused by structural defects in the premises by the failure to keep gutters, pipes, and spouts on the house in proper condition. It is not a case concerning the liability of a landlord in failing to remove ice and snow arising from the accumulation from natural conditions of the weather. There appears to be no decision of this court concerning such a situation.

The earlier cases followed by decisions in many jurisdictions held that the landlord's duty of reasonable care with respect to the maintenance of such parts of his property as were retained under the landlord's control for the common use of his tenants did not include a duty to remove therefrom natural accumulations of ice and snow. These cases have been referred to as those following the Massachusetts rule. They were based on the theory that to impose such a duty was subjecting the landlord to an unreasonable burden of vigilance and

care especially in northern areas where snow is common and that such a rule would subject the landlord to liabilities with the respect to injuries to his tenants caused from slipping on ice and snow very similar to that of an insurer.

An extensive annotation is set forth in 26 A. L. R. 2d 610, which is limited to the landlord's liability for injury or death due to ice or snow in areas or passageways used in common by tenants. Many cases which the author of the note has assembled following the so-called Massachusetts rule are set forth in section 3, page 615, of this note. On page 616 of this same note are set out the cases which the writer of the annotation states represent most of the courts which were not bound by earlier decisions. These cases hold that the landlord's general duty to exercise reasonable care to keep the parts of the premises retained in his control for the common use of his tenants in reasonably safe condition includes the duty of removing natural accumulations of ice and snow from the commonways of the structures. This rule stems from the immense increase in the multiple tenancy buildings in which the passages are retained under the control of the landlord. It is in the note suggested that there can be little reason for differentiating between ice and snow and other types of defects affecting the property and that if the landlord does not care for the area in which he retains control no one else will. This reasoning seems to be the basis for liability originally imposed on him because of artificial defects. It appears in many instances that cases from the same jurisdiction appear in both of the assembled lists. An examination of many of them discloses that they turn on the specific facts of the individual case.

It is not necessary for us at this time to choose between the two general rules or to discuss the great number of cases cited. Even in Massachusetts the landlord is not relieved from liability when it appears that he has assumed the duty of removing snow or ice under such

circumstances that the tenant is entitled to rely upon his performance. See, Erickson v. Buckley, 230 Mass. 467, 120 N. E. 126; Nash v. Webber, 204 Mass. 419, 90 N. E. 872; Miller v. Berk, 328 Mass. 393, 104 N. E. 2d 163.

The defendant admitted that it had employed Peter Sandberg as a custodian of the building in 1961 and that he was the custodian at the time of the injuries to the plaintiff. The defendant's answers to interrogatories which were introduced in evidence included the following: "No. 11: Was any action taken by the Defendants or their representatives to remove the ice and snow from the front entranceway into the premises at 3701 Jones Street, Omaha, Nebraska? Answer: Yes. Question 11A: If the answer is yes, what action was taken and by whom? Answer: Peter Sandberg regularly maintained the front entranceway of the premises in question by performance of the customary maintenance."

It appears therefrom that the defendant admitted that it has assumed the obligation of removing ice and snow from the common area and had employed the janitor for that purpose. The janitor proceeded to do that for which he was hired. He shoveled and removed the snow from this platform and it can be inferred the plaintiff had the right to rely upon the defendant's janitor to so do. The doctrine by which the landlord is held responsible for exercise of reasonable care to keep in a reasonably safe condition common passageways in leased premises over which he has retained possession and control applies and extends to the duty of removing ice or snow where he has assumed such duty under circumstances on which the tenants have a right to rely on its performance. See, Thompson v. Resnik, 85 N. W. 413, 159 A. 355; Miller v. Berk, *supra;* Robinson v. Belmont Co., 94 Colo. 534, 31 P. 2d 918; Massor v. Yates, 137 Or. 569, 3 P. 2d 784. Sufficient evidence appears in the record to submit to the jury the question of the defendant's negligence in failing to properly remove the ice and snow from the platform on which the plaintiff fell.

The defendant contends that it had no notice of the defective condition, assuming there was one. There is evidence from which the jury might infer that the snow on the porch or stoop had been present for several days and that it thawed when it was warm and froze when it was sufficiently cold. The snow was on the north side of the house where it often remains for a considerable time. The condition had existed before and complaints had been made previously to the defendant's agent. It could have been inferred that a janitar employed to "regularly maintain" the front entrance would have notice of it. The court's instruction No. 8 is as follows: "Where a landlord reserves a portion of the leased premises for the common use of all tenants, the landlord is required to keep the portion so reserved in a reasonably safe condition. A landlord is not subject to liability for bodily harm to his tenant on account of a condition of that part of the premises used in common by his tenants and under his control unless: 1. The condition created an unreasonable risk of harm to his tenant; 2. The landlord knew, or in the exercise of reasonable care should have known, of the dangerous condition and the risk involved therein; 3. The landlord was afforded a reasonable time within which to make the condition safe; and 4. The landlord in the exercise of reasonable care could have made the condition safe."

We think the court's instructions properly submitted the question of whether the defendant had reasonable and timely notice of the condition and that there was evidence from which it might be inferred that it had such notice. The defendant further complains of instruction No. 8 because it did not differentiate between an artificial and a natural condition. In a situation where the defendant has assumed the burden of removing snow and ice occurring from natural causes it would seem unnecessary to make such a distinction. Both contentions are without merit.

The defendant contends that the plaintiff was guilty of contributory negligence more than slight as a matter of law. The evidence of her action in carefully picking her way out of the entrance to the apartment on the icy porch has been set out hitherto. The issue of comparative negligence was submitted by the court on instructions and no contention is raised questioning their sufficiency. Under the evidence in the case it appears to be a question of fact properly submitted to the jury. We cannot agree with the defendant's contention.

The court did not submit to the jury any issue of assumption of risk by the plaintiff. The defendant contends the plaintiff assumed this risk as a matter of law and also complains that its tendered instruction No. 5 submitting that issue was refused by the trial court. Both the plaintiff and defendant cite the case of Landrum v. Roddy, 143 Neb. 934, 12 N. W. 2d 82, 149 A. L. R. 1041, which held that assumption of risk and contributory negligence are distinct defenses although they may both be present in certain instances.

In Landrum v. Roddy, *supra,* this court discussed assumption of risk, saying: "The defense of assumption of risk is not incompatible with contributory negligence; the two defenses may arise under the same state of facts. Some courts regard the defenses as interchangeable. However, there is a clear distinction between the defense of assumption of risk and the defense of contributory negligence, notwithstanding they may arise under the same set of facts and may sometimes overlap. There is a line of demarcation which, if carefully scrutinized and followed, will allow the court to differentiate between them. Assumption of risk rests in contract or in the principle expressed by the ancient maxim, 'volenti non fit injuria,' whereas contributory negligence rests in tort. The former involves a choice made more or less deliberately and negatives liability without reference to the fact that the plaintiff may have acted with due care, whereas the defense of contributory negligence

implies the failure of the plaintiff to exercise due care. As stated in some decisions, assumption of risk is a mental state of willingness, whereas contributory negligence is a matter of conduct. * * * While under a certain set of facts the two may be difficult to distinguish and sometimes seem to overlap, yet when carefully considered they can be distinguished and are distinct and separate and not inconsistent."

The evidence shows that both the front and rear exits were icy. The evidence does not show any freedom of choice to the plaintiff with respect to leaving the apartment. Assumption of risk is predicated upon an implied consent to be treated negligently. If the person against whom the doctrine is applied is deprived of a choice in the matter, the risk is not assumed, although it may be encountered. As stated in Robinson v. Belmont Co., *supra,* a case involving a similar situation, "Even if she had such knowledge, it did not make her a captive in her room; * * *." See Prosser on Torts (2d Ed.), § 55, p. 311. In the present case no assumption of risk is involved and the contention that it should have been submitted is unavailing to the defendant.

The defendant offered tendered instruction No. 4 to the effect that the defendant owed the plaintiff no duty to remove the snow and ice from natural accumulation from the platform, and instruction No. 6 pertaining to the requirement that the defendant have reasonable notice and time for the removal of the natural accumulation. Defendant assigns error in the refusal to give these instructions. The previous discussion in connection with the motion of the defendant for a directed verdict and the court's own instruction No. 8 heretofore set out effectually dispose of these contentions. There is no merit in them.

Defendant assigns error to the court in refusing to give instruction No. 11 to the effect that the plaintiff could not recover merely because of the depression in the platform and for the same reason objects to the

court's giving on its own motion instruction No. 3. It bases the alleged error on the decision of this court in Thompson v. Young Men's Christian Assn., 132 Neb. 843, 241 N. W. 565, which might be applicable in a proper case. In the case before us the trial court's instruction No. 3 submitted the contentions of the parties to the jury as follows: "Principal disputed factual contentions of the parties are: Contention A: On the occasion in suit the common porch was in a dangerous condition by reason of a depression and ice and snow on the floor. Contention B: Defendant knew, or in the exercise of reasonable care should have known, of the dangerous condition of the common porch. Contention C: Defendant was afforded a reasonable time within which to remove the dangerous condition before plaintiff's fall. Contention D: On the occasion in suit defendant was negligent in failing to remove the ice and snow from the common porch or to place sand, salt, or other abrasive substance on the porch. Contention E: Such negligence was a proximate cause of harm to plaintiff. Contention F: Such harm includes compensable harm. Contention G: On the occasion in suit plaintiff was negligent. Contention H: Plaintiff's negligence was a proximate cause of harm to herself."

The real issue was the condition of the platform because of the depression and ice and snow and the alleged negligence in not removing it or not properly doing so. The evidence concerning the depression was apparently introduced to show the water tended to flow back and on freezing covered the rubber mat with ice. Plaintiff did not testify she stepped into the depression but on the ice covering the depression. There is evidence from which it can be inferred that the mat was submerged in ice. The defendant by its objections to the court's action in giving its own instruction and refusing to give those tendered by it seeks to withdraw from the jury each inference of negligence one at a time. They are, however, related to one another. The court properly

submitted the issues with respect to the contentions of the parties and the defendant's objections have no merit.

The defendant objects to the giving of instruction No. 13 relating to damages because it submitted among other things the future impairment of the plaintiff's earning power. Careful review of the evidence shows the defendant missed 39 days' work from school and then returned to her task of teaching. There is evidence she had lost time from her work after the accident. There is evidence that she had a partial permanent disability in the ankle that inconveniences her in climbing stairs and causes discomfort on those occasions, and in standing while teaching and in certain work on the playground with the students. Nothing is shown to indicate she will not be able to earn the same salary in the future or to what extent her earning power would be diminished. Her own doctor's testimony with regard to her future disability is as follows: "Q. How does the roughness of the joint, Doctor, affect the motion? A. In two ways, it narrows the joint and it may cause some discomfort which will cause an involuntary restriction of the joint by the patient's muscles. Q. How does it cause discomfort? A. Roughness is prone to produce swelling and inflammation, which in turn produces pain. Q. Doctor, do you have an opinion, based upon the examination made 5-21-63, and the X-rays taken at that time, as to whether or not the condition you found in Mrs. Schwab is a permanent condition? A. I have. Q. Is your opinion based upon reasonable medical certainty? A. Yes, sir. Q. What is your opinion? A. I think some percentage of disability will persist in this ankle. Q. In relating this to a percentage, Doctor—what percentage? A. I place it at ten to fifteen percent of the ankle. Q. You call that a partial permanent disability? A. Yes, sir."

The only testimony the doctor gave related in any way to her ability to perform her school work in which she was engaged at the time was the following: "Q. Doc-

tor, would you state either yes or no whether the patient in this case would be handicapped in any way in her profession as a teacher as a result of this particular injury that you have treated her. A. To some degree, of course, she would be. Q. I understand the degree and percentage you have given us but generally as to the performance of her work. A. I cannot answer that."

Damages for a permanent injury may not be based on speculation, probabilities, or uncertainty but must be shown by competent evidence that such damage is reasonably certain as the proximate result of the pleaded injury. A person to whom another has tortiously caused harm is entitled to compensatory damages if he establishes by proof the extent of such harm and the amount of his damage with reasonable certainty. See, Johnsen v. Taylor, 169 Neb. 280, 99 N. W. 2d 254; Caster v. Moeller, 176 Neb. 30, 125 N. W. 2d 89; Burkamp v. Roberts Sanitary Dairy, 117 Neb. 60, 219 N. W. 805; 15 Am. Jur., Damages, § 91, p. 501. Considering these rules it is evident that the plaintiff did not prove permanent loss of earning power although she did show permanent injury.

Because of the error in submitting permanent loss of earning power to the jury, the judgment must be reversed and the cause remanded for new trial in accordance with this opinion.

REVERSED AND REMANDED.