ROBERTA MAKOVICKA, APPELLANT, v. JOHN LUKES, APPELLEE.

153 N. W. 2d 733

Filed October 27, 1967. No. 36569.

John McArthur and A. James McArthur, for appellant.

Kier, Cobb & Luedtke, for appellee.

Heard before WHITE, C. J., CARTER, SPENCER, BOSLAUGH, SMITH, McCOWN, and NEWTON, JJ.

McCown, J.

This is an action for personal injury allegedly resulting from what is termed a practical joke by the plaintiff, and horseplay by the defendant.

The two families of the plaintiff and defendant had been personal friends for some years. The defendant is a nephew of the plaintiff's husband. On an October evening in 1964, the two families were together at the farm home of the plaintiff and her husband. Following the evening meal, the parents and children were sitting and standing around in the kitchen and living area of the house talking, laughing, and joking with each other. At approximately 8 p.m., after the families had been in the home for approximately an hour and a half, the defendant suddenly picked the plaintiff up in his arms, carried her across the living room, onto the front porch, and out on a concrete slab forming the top of a brick bannister alongside the porch steps. He lost his balance and jumped down to the concrete sidewalk 39 inches below with the plaintiff still in his arms. The plaintiff felt an odd or snapping sensation in her neck, but no pain. Neither the plaintiff nor the defendant were struck by any object, nor did either of them fall down. The defendant placed the plaintiff back on her feet and they both returned to the house. The plaintiff weighed 115 to 120 pounds and the defendant was 6 feet 1½ inches tall and weighed 216 pounds.

The next evening, the plaintiff went to the hospital with a swelling in her neck which was later diagnosed as a branchial cleft cyst. The branchial cleft was congenital, and such a condition and its activation into a cyst are unusual. The cyst was removed December 12, 1964.

The jury returned a verdict for the defendant. Plaintiff assigns as error the giving of an instruction which submitted to the jury the issue of assumption of risk by the plaintiff.

The defendant had, on several previous occasions,

picked the plaintiff up. Plaintiff's testimony was that on previous occasions when the defendant had picked her up, he had given her a bear hug and set her down. There is no dispute that on the evening in question, the defendant gave no indication of his intention to pick the plaintiff up or to engage in any practical jokes or horseplay, and that the plaintiff was surprised by the action. There had been no previous physical contact, touching, or play on the evening in question. The defendant testified that he did not know why he walked out on the bannister and that he had no specific plan in mind when he picked her up. The defendant's own evidence was that the plaintiff was kicking and telling him to put her down, although the clear implication is that these actions were interpreted by the defendant as being playful. The defendant himself testified that on most of the occasions they had been together, he had "given her a hug in some way, or picked her up, or something."

When one does an act which proves injurious to another, an action in tort may arise in favor of the injured person, although the act was done without malice and no injury was intended. Newman v. Christensen, 149 Neb. 471, 31 N. W. 2d 417.

The doctrine of assumption of risk is applicable where the injured party knows that a danger exists and voluntarily assumes the risk of injury from that danger. The rule does not apply to an unknown and hidden danger. Darnell v. Panhandle Coop. Assn., 175 Neb. 40, 120 N. W. 2d 278.

"Except where he expressly so agrees, a plaintiff does not assume a risk of harm arising from the defendant's conduct unless he then knows of the existence of the risk and appreciates its unreasonable character." Restatement 2d, Torts, § 496D, p. 574.

Restatement 2d, Torts, § 496E, p. 576, states: "(1) A plaintiff does not assume a risk of harm unless he voluntarily accepts the risk. (2) The plaintiff's acceptance of a risk is not voluntary if the defendant's

tortious conduct has left him no reasonable alternative course of conduct in order to (a) avert harm to himself or another, or (b) exercise or protect a right or privilege of which the defendant has no right to deprive him."

In Schwab v. Allou Corp., 177 Neb. 342, 128 N. W. 2d 835, at page 352, this court said: "Assumption of risk is predicated upon an implied consent to be treated negligently. If the person against whom the doctrine is applied is deprived of a choice in the matter, the risk is not assumed, although it may be encountered."

We cannot accept the implication that the passive object of prior practical jokes or horseplay, who did not complain on previous occasions, should be treated as assuming the risk of subsequent practical jokes or horseplay, of which she had no knowledge, simply because she was again the object. Neither can we understand how the plaintiff, having no knowledge of intended horseplay, much less its scope or extent, can be considered an active, voluntary participant who assumes the risk. In the case of assumption of risk: "The standard to be applied is a subjective one, of what the particular plaintiff in fact sees, knows, understands and appreciates. In this it differs from the objective standard which is applied to contributory negligence." Restatement 2d, Torts, § 496D, Comment c, p. 575. Where the defendant himself testifies that he had no specific plan in mind when he picked plaintiff up, it becomes a problem in metaphysics to attribute knowledge of the risks which might be involved to the plaintiff. Under the circumstances here, it was improper to submit to the jury the issue of assumption of risk by the plaintiff.

The defendant also contends that defendant's motion for directed verdict should have been granted in any event because the medical testimony established that any causal connection between trauma and a branchial cleft cyst was purely conjectural and speculative. A thorough review of the medical evidence convinces us that the testimony of plaintiff's doctor was sufficient to take the

issue to the jury. Defendant's motion for directed verdict was properly overruled.

The judgment of the district court is, therefore, reversed and the cause remanded for further proceedings.

REVERSED AND REMANDED.