PHYLLIS McDERMOTT, APPELLANT, v. PLATTE COUNTY
AGRICULTURAL SOCIETY AND NEBRASKA PORK INDUSTRY
EXPOSITION, INC., APPELLEES.
515 N.W.2d 121

Filed April 22, 1994.   No. S-92-467.

James L. Haszard, of McHenry & Flowers, for appellant.

Michael A. England and Stephen L. Ahl, of Wolfe, Anderson, Hurd, Luers & Ahl, for appellee Platte County Agricultural Society.

Gail S. Perry, of Baylor, Evnen, Curtiss, Grimit & Witt, for appellee Nebraska Pork Industry Exposition, Inc.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, FAHRNBRUCH, LANPHIER, and WRIGHT, JJ.

WRIGHT, J.

Phyllis McDermott sued the Platte County Agricultural Society (Ag Society) and the Nebraska Pork Industry Exposition, Inc. (Pork Exposition), for damages as a result of a personal injury which occurred when McDermott slipped and fell on ice and snow in the parking lot of Ag Park, which is owned by the Ag Society. McDermott appeals a jury verdict

rendered in favor of both defendants.

## SCOPE OF REVIEW

In all proceedings where the Nebraska Evidence Rules apply, admissibility of evidence is controlled by the Nebraska Evidence Rules, not judicial discretion, except in those instances under the Nebraska Evidence Rules when judicial discretion is a factor involved in the admissibility of evidence. *Kudlacek v. Fiat S.p.A.*, 244 Neb. 822, 509 N.W.2d 603 (1994).

In an appeal based on the claim of an erroneous jury instruction, the appellant has the burden to show that the questioned instruction was prejudicial or otherwise adversely affected a substantial right of the appellant. *Kopecky v. National Farms, Inc.*, 244 Neb. 846, 510 N.W.2d 41 (1994).

## ASSIGNMENTS OF ERROR

McDermott assigns as error the trial court's sustaining of the Ag Society's motion in limine, its refusal to give McDermott's proposed jury instruction regarding assumption of risk, its giving of jury instructions objected to by McDermott, and its overruling her motion for new trial.

## FACTS

On February 10, 1988, McDermott drove from Lincoln to Columbus to visit the Pork Exposition, where her husband was an exhibitor. As McDermott got close to Columbus, the road conditions deteriorated. The temperature in Columbus was 10 to 12 degrees below zero, and the winds were strong.

When she arrived in Columbus, McDermott stopped for gas and observed that the sidewalks and streets were covered with patches of ice and snow. She then drove to Ag Park; parked in the lot adjacent to the exhibition hall, six or seven rows of cars away from the building; and proceeded to walk across the lot. The parking lot was covered with patches of ice and snow, and McDermott did not recall seeing any spots of bare pavement. Three people walking ahead of McDermott tried to open the door to the exposition building closest to where McDermott had parked. Those three people found that the door was locked and proceeded on the sidewalk to another door at the opposite end of the building. When she saw the people headed toward

the other door and before she reached the sidewalk, McDermott changed direction and also headed for the other door. She stepped back out of the way to allow two approaching trucks to pass and then stepped forward again, onto snow which concealed ice on the pavement. McDermott slipped and fell, breaking her ankle. She stated that she saw no bare pavement on either side of the spot where she fell.

On the morning of the accident, Frank Zuroski, Ag Park grounds superintendent, arrived shortly before 7 o'clock. Zuroski spread approximately 50 pounds of salt on the sidewalk on the north and west sides of the building and scattered sand on top of the salt. No sand or salt was spread on the parking lot before McDermott's accident. Zuroski stated that the city of Columbus would plow the parking lot if requested after first plowing the streets, hospital grounds, and school grounds, although the city usually plowed Ag Park automatically. He also stated that the city would have plowed the parking lot if it was an emergency. Zuroski had not called the city before the accident. Although Zuroski called the city for assistance after the accident, he stated that he did not know if sanding the parking lot would have helped the traction before the accident because it was too windy.

## ANALYSIS

McDermott claims that she should have been allowed to present evidence of the subsequent remedial measures of sanding and salting the parking lot to show that the measures were feasible and to impeach Zuroski's testimony. The admission of evidence is controlled by the rules of evidence and not by judicial discretion, except in those instances under the evidence rules when judicial discretion is a factor involved in the admissibility of evidence. *Kudlacek v. Fiat S.p.A.*, 244 Neb. 822, 509 N.W.2d 603 (1994).

Neb. Rev. Stat. § 27-407 (Reissue 1989) provides in part:

When, after an event, measures are taken which, if taken previously, would have made the event less likely to occur, evidence of the subsequent measures is not admissible to prove negligence or culpable conduct in connection with the event. This rule does not require the

exclusion of evidence of subsequent measures when offered for another purpose, such as . . . feasibility of precautionary measures, if controverted, or impeachment.

Thus, the evidence that the parking lot was sanded and salted would be admissible if feasibility was controverted or if the evidence was offered for purposes of impeachment.

In this case, it is not disputed that sand and salt could have been placed on the parking lot prior to the accident. Zuroski testified that he applied salt to the sidewalks early in the morning. He said the wind blew away much of the sand placed on the sidewalks, although the sand that remained helped improve traction.

The question is whether Zuroski's claim that sanding in the parking lot would not have improved traction because it was too windy allows McDermott to introduce into evidence testimony concerning the subsequent sanding and salting of the parking lot because feasibility was controverted.

In *Kurz v. Dinklage Feed Yard, Inc.*, 205 Neb. 125, 286 N.W.2d 257 (1979), the court held that § 27-407 permits evidence of subsequent measures to show precautionary measures if the feasibility is controverted. Feasibility, as used under § 27-407, means more than capable of being done. It includes effectiveness and practicality. *Kurz v. Dinklage Feed Yard, Inc., supra.* In *Kurz*, the evidence showed that the fences which were erected at the defendant's feedlot were adequate to contain the cattle under normal conditions, but during a heavy snowstorm, snow would drift around the fences and permit the cattle to escape over the top. Evidence showed that this condition should have been anticipated and could have been avoided by the construction of higher fences and the erection of windbreaks and snow fences. The defendant's manager testified that snow fences would not have been effective to prevent the escape of cattle and that snow fences were dangerous and impractical. The court held that evidence that the defendant erected snow fences after the snowstorm was admissible as tending to show that the testimony of the defendant's manager was untrue and that snow fences were feasible as a precautionary measure.

In this case, the fact which determines the admissibility of the subsequent sanding and salting by the city is whether the feasibility of such actions was controverted. McDermott's offer of proof stated that Zuroski would testify that he called the city immediately after McDermott's fall, that city workers arrived 10 to 15 minutes later and applied sand and salt to the parking lot, and that such application improved the traction. McDermott also contends that Zuroski's testimony implied that the city would not have sanded the lot prior to her fall unless it was an emergency. She argues that the excluded evidence would have impeached Zuroski's testimony that spreading sand would not have helped traction and that the city would not have responded to his call to sand the lot unless it was an emergency. McDermott points out that the jury could have found that the defendants were not negligent because they could not have sanded the lot prior to McDermott's fall or because the sand would have been ineffective. She contends that the excluded evidence contradicts both of those defenses and that, therefore, the failure to allow such evidence was prejudicial.

The defendants rely upon *Wollenhaupt v. Andersen Fire Equip. Co.*, 232 Neb. 275, 440 N.W.2d 447 (1989). *Wollenhaupt*, although setting forth the reasoning for the inadmissibility of subsequent remedial measures, is not on point. In *Wollenhaupt*, no evidence was offered concerning any subsequent conduct by the defendant which could be found to be a remedial measure or a subsequent precaution. Wollenhaupt was injured when a machine used in the printing process caught fire. He was standing to the side of the machine, which used a highly flammable substance, when the fire began. An automatic fire protection system did not automatically operate, although a fire several months earlier had been extinguished by the automatic system and no one had been injured. The district court refused to admit evidence relating to another fire which occurred after Wollenhaupt was injured. Wollenhaupt and his employer's offer of proof was intended to show that the automatic system had not been altered between the last two fires. We held that because no modification or added safety measures were taken between the last two fires, the use of § 27-407 to exclude evidence of the subsequent fire was

error. *Wollenhaupt* is not applicable to the facts here because subsequent measures were taken.

Zuroski's testimony placed the subsequent remedial measures in issue. The feasibility of sanding and salting the parking lot became controverted as a result of the following exchange:

> Q. Would it have been feasible to put sand and gravel on the parking lot that morning prior to the time that Mrs. McDermott fell on the lot?
>
> . . . .
>
> A. I don't think it would have done any good right at the present.
>
> . . . .
>
> A. Because it was too windy to hold the salt down . . . the sand was even blowing.

The defendants misconstrue the term "feasibility." Feasibility is not determined by whether the sand and salt could have been placed on the parking lot. The fact that it was possible to sand and salt the parking lot was not controverted. The controversy was whether the sand and salt would have been of any benefit. See *Kurz v. Dinklage Feed Yard, Inc.*, 205 Neb. 125, 286 N.W.2d 257 (1979). The determination of feasibility includes a consideration of whether an action would have been effective and practical. *Id.*

Evidence of the subsequent application of sand and salt was admissible to show that the measure was effective and that the city would have assisted even in the absence of an emergency. The trial court erred in failing to allow the testimony concerning the subsequent sanding and salting of the lot.

McDermott also claims that the jury was incorrectly instructed on assumption of risk because the jury was not instructed that the defendants' conduct in placing her in such a position was an issue that the jury could consider. McDermott argues that the instruction as given allowed the jury no choice but to find the claim was barred because McDermott assumed the risk. The court instructed the jury that the defendants had the burden to prove: "1. That the plaintiff knew of and understood the danger; 2. That the plaintiff voluntarily exposed herself to that danger; and 3. That the plaintiff's injury

occurred as a result of her exposure to that danger." McDermott's motion for a directed verdict on assumption of risk was overruled, and she objected to any instruction on assumption of risk.

Before the issue of assumption of risk may be submitted to the jury, the evidence must show that the plaintiff knew of the danger, understood the danger, and voluntarily exposed himself or herself to the danger which proximately caused the plaintiff's injury. *Grote v. Meyers Land & Cattle Co.*, 240 Neb. 959, 485 N.W.2d 748 (1992). Assumption of risk is predicated upon the plaintiff's voluntary exposure to the known danger caused by the defendant's negligence. *Sikyta v. Arrow Stage Lines*, 238 Neb. 289, 470 N.W.2d 724 (1991).

One assumes the risk when one knows of the danger and voluntarily acquiesces in it. See W. Page Keeton et al., Prosser and Keeton on the Law of Torts § 32 (5th ed. 1984). "[E]xcept where he expressly so agrees, a plaintiff does not assume a risk of harm arising from the defendant's conduct unless he then knows of the existence of the risk and appreciates its unreasonable character, or the danger involved, including the magnitude thereof, and voluntarily accepts the risk." *Jensen v. Hawkins Constr. Co.*, 193 Neb. 220, 226, 226 N.W.2d 346, 350-51 (1975).

McDermott knew of the danger created by the ice and snow covering the parking lot. She exposed herself to the danger which proximately caused her injury. She exited her car, proceeded to walk across an icy parking lot, and ultimately slipped and fell.

In each case we must apply a subjective standard based upon the particular facts and circumstances of the event. " 'The standard to be applied is a subjective one, of what the particular plaintiff in fact sees, knows, understands and appreciates. In this it differs from the objective standard which is applied to contributory negligence.' " *Makovicka v. Lukes*, 182 Neb. 168, 171, 153 N.W.2d 733, 735 (1967), quoting Restatement (Second) of Torts § 496 D, comment *c.* (1965).

"(1) A plaintiff does not assume a risk of harm unless he voluntarily accepts the risk. (2) The plaintiff's acceptance of a risk is not voluntary if the defendant's tortious

conduct has left him no reasonable alternative course of conduct in order to (a) avert harm to himself or another, or (b) exercise or protect a right or privilege of which the defendant has no right to deprive him."
*Makovicka*, 182 Neb. at 170-71, 153 N.W.2d at 735, quoting the Restatement, *supra*, § 496 E. "If the person against whom the doctrine is applied is deprived of a choice in the matter, the risk is not assumed, although it may be encountered." *Schwab v. Allou Corp.*, 177 Neb. 342, 352, 128 N.W.2d 835, 841 (1964).

McDermott argues that the court should have given the following instruction: "A plaintiff does not assume a risk of harm unless he or she voluntarily accepts the risk. A plaintiff's acceptance of a risk is not voluntary if the defendant's conduct has left plaintiff no reasonable alternative course of conduct in order to avert harm to plaintiff."

In *Carnes v. Weesner*, 229 Neb. 641, 428 N.W.2d 493 (1988), we held that it was not prejudicial error to give an instruction like the one McDermott requested. Carnes, who had taken her 12-year-old daughter to the orthodontist for a monthly appointment, fell on the ice and snow in the dental office parking lot. Carnes noticed when she arrived that the lot was icy and slippery, and she warned her daughter to be careful. When she returned to the car following the appointment, she slipped and injured herself. The defendants objected to an instruction similar to that requested by McDermott. We found that the trial court did not abuse its discretion in giving the instruction. Carnes had undergone substantial inconvenience and financial expense to go to the orthodontic office. We held that it was not prejudicial error to instruct the jury to consider whether the defendants' conduct had left the plaintiff with a reasonable course of conduct alternative to returning to her car and that the jury was properly instructed on the issue of assumption of risk. We did not hold that the court was required to give such an instruction.

Here, the trial court refused to give McDermott's instruction because it found that the evidence did not support the instruction. McDermott argues that based on the evidence, the jury should have been instructed to consider whether the defendants left her with a reasonable alternative course of

conduct when she arrived at Ag Park and found the parking lot covered with ice and snow.

We find that McDermott's proposed instruction relating to assumption of risk should have been given and that it was prejudicial error to refuse to give it. In an appeal based on the claim of an erroneous jury instruction, the appellant has the burden to show that the questioned instruction was prejudicial or otherwise adversely affected a substantial right of the appellant. *Kopecky v. National Farms, Inc.*, 244 Neb. 846, 510 N.W.2d 41 (1994). "Notwithstanding absence of a request for a specific instruction, a trial court must instruct a jury on material or relevant issues presented by the pleadings and supported by the evidence." *Anderson v. Union Pacific RR. Co.*, 229 Neb. 321, 333, 426 N.W.2d 518, 525 (1988). The doctrine of assumption of risk applies only when the danger is known and the risk therefrom is appreciated and voluntarily accepted. *Bray v. Kate, Inc.*, 235 Neb. 315, 454 N.W.2d 698 (1990).

Whether McDermott's actions were voluntary is a material issue of fact presented by the pleadings and the evidence, and the court should have so instructed the jury. Whether the defendants' conduct left McDermott with a reasonable alternative course of conduct was a question of fact that was presented by the evidence. It may be that McDermott, upon finding the parking lot covered with ice and snow, should have returned to Lincoln or, upon seeing that the first door was locked, should have proceeded directly to the sidewalk. It may be that she was left with no reasonable alternative because the parking lot had not been sanded or salted. Whether there existed a reasonable and adequate alternative course of conduct depends upon all relevant factors that would affect the decision of a reasonable person under the circumstances.

Under the facts in this case, McDermott's requested instruction should have been given to permit the jury to determine whether McDermott voluntarily accepted the danger by exiting her car and walking on the snow-covered and icy parking lot toward the building. In Nebraska, winter snow and ice are a fact of life, and one does not automatically assume the risk by walking across a snow- or ice-covered parking lot.

McDermott was denied the substantial right of having the jury decide whether she voluntarily assumed the risk. As a result, she was denied her right to a fair trial on her negligence claim.

The record shows that McDermott objected to the last paragraph of instruction No. 21 because it had already been stated and therefore received additional emphasis. Instruction No. 21 states in part: "Remember, throughout your deliberations you must not engage in any speculation, guess, or conjecture and you must not award any damages by way of punishment or through sympathy." Instruction No. 22 repeated the same elements. Since the jury found against McDermott on the issue of liability, the jury did not have to consider instructions Nos. 21 and 22, and therefore, we do not address this assignment of error except to note that a jury does not need to be told more than once that an award of damages cannot be speculative.

For the reasons set forth in this opinion, we reverse the judgment and remand the cause for a new trial.

REVERSED AND REMANDED FOR A NEW TRIAL.