REBECCA S. DUKAT, APPELLANT, V. LEISERV, INC., DOING BUSINESS AS MOCKINGBIRD LANES, APPELLEE.

578 N.W. 2d 486

Filed April 28, 1998.   No. A-96-1257.

Daniel W. Ryberg for appellant.

Richard J. Gilloon, of Erickson & Sederstrom, P.C., for appellee.

HANNON, SIEVERS, and MUES, Judges.

SIEVERS, Judge.

## INTRODUCTION

We consider whether a jury should be instructed on the defense of assumption of risk when (1) the plaintiff slips and falls on an icy sidewalk outside of a bowling alley, (2) the property owner admits that the sidewalk was the only way in and out of the bowling alley, and (3) the injured plaintiff had prior knowledge of the sidewalk's icy condition.

## FACTUAL BACKGROUND

Rebecca S. Dukat arrived at Mockingbird Lanes, a bowling alley in Omaha, Nebraska, at approximately 6 p.m. on Wednesday, February 2, 1994, to bowl in her league game. Witnesses described the night of February 2 as cold, with some recalling that there had been sleet and snow during the day, and others testifying that they had no memory of any precipitation. However, all the witnesses who were asked about the conditions of the bowling alley's parking lot and adjacent sidewalk agreed that they were snow and ice covered.

Dukat proceeded to walk into the bowling alley on the only sidewalk provided in and out of the building. She testified that she noticed the sidewalk was icy. After bowling three games and drinking three beers, Dukat exited the bowling alley at approximately 9 p.m. She retraced her steps on the same sidewalk. The sidewalk was still ice covered and in a condition which, according to Frank Jameson, general manager of Mockingbird Lanes, was "unacceptable" if the bowling alley were open to customers. As Dukat proceeded along the sidewalk to her car, she slipped, attempted to catch herself by reaching toward a car, and fell. She suffered a fracture of both bones in her left ankle as well as a ruptured ligament.

## PROCEDURAL BACKGROUND

Dukat sued Leiserv, Inc., doing business as Mockingbird Lanes in Omaha, and Brunswick Corporation, the parent company of Leiserv, in the district court for Douglas County,

Nebraska. Dukat alleged that Leiserv and Brunswick were negligent in failing to keep the sidewalk in a reasonably safe condition, in failing to warn her of a dangerous condition, and in failing to take adequate and reasonable measures to protect her.

Leiserv and Brunswick alleged two affirmative defenses: (1) Dukat was contributorily negligent (a) in failing to maintain a proper lookout and take notice of the condition of the sidewalk and (b) in consuming alcohol to the extent that it impaired her ability to walk and to take reasonable precautions, and (2) Dukat had assumed the risk of injury.

Approximately 2 weeks before trial, a hearing was held on Leiserv and Brunswick's motion to strike the certificate of readiness. The motion to strike was precipitated by Dukat's attempt to add four witnesses, including Calvin Naegelin, to the certificate. According to Dukat's attorney, Naegelin was to be used to "interpret climatological data for the period around Feb. 2." Leiserv and Brunswick opposed the addition of Naegelin because Naegelin had not been disclosed as an expert witness in answers to interrogatories and because there was not enough time to thoroughly depose him before trial. Dukat, after arguing that Naegelin would not be used as an expert and that there was still time to depose him before trial, concluded: "Now, I'm going to say this. Should the Court still entertain a motion to strike, then I would not call Mr. Naegelin." The court decided to grant Leiserv and Brunswick's motion to strike the certificate, to which Dukat responded: "Then I won't call Cal Naegelin."

The jury trial proceeded as scheduled on September 5, 6, and 9, 1996. At the end of Dukat's evidence, the court granted Brunswick's motion for a directed verdict on the ground that there was no evidence of Brunswick's responsibility or control over the employees of Mockingbird Lanes.

Leiserv then called Jameson, Mockingbird Lanes' general manager, to the stand. Leiserv introduced exhibit 28, a "local climatological data monthly entry" for February 1994, through Jameson, over objection by Dukat. Jameson was asked to look at exhibit 28, to read data from the exhibit to the jury, and to interpret certain data from the exhibit, e.g., "S" as snow and "SW" as snow showers, using the codes on the exhibit. After Leiserv rested, Dukat indicated that she intended to call

Naegelin as a rebuttal witness to rebut the testimony of Jameson with respect to exhibit 28. Leiserv objected, arguing:

> Before trial started, Mr. Ryberg said he intended to use Naegelin. I objected . . . and the Court appeared to conclude that either the defendant was entitled to a continuance or Mr. Ryberg could proceed without Mr. Naegelin. He chose to proceed without Mr. Naegelin. Now on rebuttal without the defendants having presented any expert testimony Mr. Ryberg is trying to bring in Dr. Naegelin again still without having supplemented his answers to interrogatories, without giving me any indication as to what this man knows, what he's going to testify to.

The court ruled that Dukat could not call Naegelin as a rebuttal witness. Dukat then made an offer of proof that if Naegelin were allowed to testify, he would indicate that definitions such as "S" or "SW" only demonstrated that "a snowflake or two" had come down and that Naegelin's interpretation of exhibit 28 would preclude the finding that it drizzled on February 2.

On September 9, 1996, the jury returned a general verdict for Leiserv. After her motion for new trial was overruled, Dukat appealed to this court.

## ASSIGNMENTS OF ERROR

Dukat alleges that the district court erred (1) in giving an instruction on assumption of risk, (2) in giving the instruction on contributory negligence, (3) in failing to direct a verdict of liability against Leiserv, (4) in instructing on Dukat's alleged intoxication, and (5) in failing to permit rebuttal testimony.

## STANDARD OF REVIEW

■ In an appeal based on a claim of an erroneous jury instruction, the appellant has the burden to show that the questioned instruction was prejudicial or otherwise adversely affected a substantial right of the appellant. *Sacco v. Carothers*, 253 Neb. 9, 567 N.W.2d 299 (1997).

■ A jury instruction is not error if, taken as a whole, it correctly states the law, is not misleading, and adequately covers the issues. *Scharmann v. Dayton Hudson Corp.*, 247 Neb. 304, 526 N.W.2d 436 (1995).

## ANALYSIS

*Assumption of Risk.*

■ Before the defense of assumption of risk may be submitted to a jury, the defendant has the burden to establish the elements of assumption of risk, which are that the plaintiff knew of the danger, understood the danger, and voluntarily exposed himself or herself to the danger which proximately caused the plaintiff's injury. *Williamson v. Provident Group, Inc.*, 250 Neb. 553, 550 N.W.2d 338 (1996). Dukat argues that Leiserv failed to meet its burden of establishing the elements of assumption of risk. Specifically, she argues that Leiserv failed to prove that she knew, understood, and voluntarily exposed herself to the danger of walking unassisted on an icy sidewalk. Dukat's argument focuses primarily on the "voluntary" element of assumption of risk. She maintains that because the sidewalk was the only route into and out of the bowling alley, she did not "voluntarily" expose herself to the danger, rather, according to Nebraska case law, she merely "encountered" it.

Leiserv maintains that Dukat "knew full well that the sidewalk and parking lot were icy," brief for appellee at 12, because on her way into the bowling alley she had noticed the sidewalk was slippery. Leiserv contends that Dukat voluntarily exposed herself to the danger when she failed to (1) ask someone to assist her to her car or (2) tell a Mockingbird Lanes employee about the icy conditions and that the sidewalk needed sand or "ice melt." Brief for appellee at 13.

■ The standard to be applied in determining whether a plaintiff has assumed the risk of injury is a subjective one based upon the particular facts and circumstances of the event. *Williamson, supra.* The subjective standard involves what " 'the particular plaintiff in fact sees, knows, understands and appreciates. In this it differs from the objective standard which is applied to contributory negligence.' " *Makovicka v. Lukes*, 182 Neb. 168, 171, 153 N.W.2d 733, 735 (1967). If one who knows and comprehends the danger chooses to expose himself or herself thereto, even though the choice is not negligent, he or she will be deemed to have assumed the risk of injury and be precluded from recovery. *Circo v. Sisson*, 193 Neb. 704, 229 N.W.2d 50 (1975). See, also, *Hollamon v. Eagle Raceway, Inc.*,

187 Neb. 221, 188 N.W.2d 710 (1971) (car owner assumed risk of watching race from pit area located off first turn where he knew out-of-control race car could land), *overruled on other grounds, Anderson v. Service Merchandise Co.*, 240 Neb. 873, 485 N.W.2d 170 (1992). Thus, it was Leiserv's burden to show that Dukat knowingly and voluntarily exposed herself to the risk of walking on the sidewalk, but a subjective standard is employed.

*Schwab v. Allou Corp.*, 177 Neb. 342, 128 N.W.2d 835 (1964), is the case most on point for our analysis. Schwab, a 68-year-old school teacher, sued Allou Corporation when she fell on an icy stoop or porch at the front entrance of an apartment building owned by Allou where Schwab lived. When Schwab left for school the day before the accident, the porch was free of water. When she returned about 4:30 p.m., there was water on the porch. The next morning, the day of the accident, Schwab observed that the entire porch was icy, but, because the rear exit of the apartment building was in a similar icy condition, she proceeded to go to work out the front door. Schwab fell on the ice and broke her ankle.

At trial, the court did not submit the defense of assumption of risk to the jury. On appeal, Allou argued that this was error. The Supreme Court of Nebraska affirmed the trial court's decision:

> The evidence shows that both the front and rear exits were icy. The evidence does not show any freedom of choice to the plaintiff with respect to leaving the apartment. Assumption of risk is predicated upon an implied consent to be treated negligently. If the person against whom the doctrine is applied is deprived of a choice in the matter, the risk is not assumed, although it may be encountered.

*Schwab*, 177 Neb. at 352, 128 N.W.2d at 841.

*Schwab* turns on whether there was a choice of a safer route. To us, the essence of the *Schwab* decision is that Schwab could not have voluntarily assumed the risk of using her icy porch, since there was not a choice of a safer route to leave her apartment and go to work. There was no suggestion in the court's opinion that the law required Schwab to remain inside her apartment and miss work.

In *McDermott v. Platte Cty. Ag. Socy.*, 245 Neb. 698, 515 N.W.2d 121 (1994), McDermott sued the Platte County Agricultural Society for damages resulting from a personal injury which occurred when McDermott slipped and fell on ice and snow in the parking lot of Ag Park, which was owned by the Platte County Ag Society. Before the accident, McDermott observed that the sidewalks and streets were covered with patches of ice and snow and that the temperature was 10 to 12 degrees below zero. McDermott parked her car in a lot at Ag Park and proceeded to walk across it. The parking lot was covered with patches of ice and snow. Three people walking ahead of McDermott tried to open the door to the exposition building closest to where McDermott had parked. They found that the door was locked and proceeded on the sidewalk to another door at the opposite end of the building. As McDermott began following them to the other door, she stepped back out of the way to allow two approaching trucks to pass and then stepped forward again, onto snow which concealed ice on the pavement. McDermott slipped and fell, breaking her ankle. The jury found against McDermott.

■ McDermott, on appeal to the Supreme Court of Nebraska, claimed that the jury was incorrectly instructed on assumption of risk. McDermott argued that the court should have given the following instruction: " 'A plaintiff does not assume a risk of harm unless he or she voluntarily accepts the risk. A plaintiff's acceptance of a risk is not voluntary if the defendant's conduct has left plaintiff no reasonable alternative course of conduct in order to avert harm to plaintiff.' " *McDermott*, 245 Neb. at 705, 515 N.W.2d at 126. The court, finding that McDermott's proposed instruction should have been given, stated:

> " '(1) A plaintiff does not assume a risk of harm unless he voluntarily accepts the risk. (2) The plaintiff's acceptance of a risk is not voluntary if the defendant's tortious conduct has left him no reasonable alternative course of conduct in order to (a) avert harm to himself or another, or (b) exercise or protect a right or privilege of which the defendant has no right to deprive him.' " *Makovicka* [*v. Lukes*], 182 Neb. [168,] 170-71, 153 N.W.2d [733,] 735 [(1967)], quoting the Restatement [(Second) of Torts] § 496 E [(1965)].

*McDermott*, 245 Neb. at 704-05, 515 N.W.2d at 126.

The first use of the Restatement (Second) of Torts § 496 E (1965) in Nebraska appears to be *Makovicka v. Lukes*, 182 Neb. 168, 153 N.W.2d 733 (1967), where the plaintiff was picked up by the defendant during a horseplay incident, the like of which had occurred before. The defendant carried the plaintiff outside where the defendant jumped off a step 39 inches from the ground. The impact allegedly snapped the plaintiff's neck and aggravated a branchial cleft cyst. The Supreme Court found error in the submission of assumption of risk to the jury, citing evidence that since the defendant did not know what he was going to do with the plaintiff when he picked her up, it would be difficult to attribute knowledge to the plaintiff so that she could then knowingly and voluntarily assume the risk of injury from the horseplay. In short, in *Makovicka*, it was obvious that the plaintiff had no choice in the course of conduct which was followed.

In *McDermott,* § 496 E was used again, and the court's opinion states: "It may be that McDermott, upon finding the parking lot covered with ice and snow, should have returned to Lincoln . . . ." 245 Neb. at 706, 515 N.W.2d at 127. The court held that the "alternative course of conduct" instruction, as the plaintiff requested, should have been given to "permit the jury to determine whether McDermott voluntarily accepted the danger by exiting her car and walking on the snow-covered and icy parking lot toward the building." *Id.* The question posed by the Supreme Court—should McDermott have returned to Lincoln—makes one wonder how McDermott could possibly benefit by the requested instruction and, with all due respect, whether *McDermott* represents how § 496 E is to work. This is particularly true because, at least to us, the opinion clearly suggests that the following would be a proper jury argument using § 496 E, i.e.: McDermott had a safe choice—go back to Lincoln—and because she did not, she voluntarily assumed the risk of injury from walking on the icy parking lot. Close examination of § 496 E of the Restatement does not support the suggestion in *McDermott* that one has to forgo his or her destination or be guilty of assumption of risk. However, whether the "objectively" reasonable man or woman would do so or be guilty of contributory negligence is a different question.

The doctrine of a safer choice as used in *Schwab* and as illustrated by § 496 E suggests something other than retreat from where a person needs to be or wants to be. In other words, the notion that McDermott should return to Lincoln to avoid assuming the risk, with all due respect, is not the type of safer choice contemplated by § 496 E of the Restatement. To further amplify our point, we quote two illustrations from the Restatement, *supra*, comment *d*. at 579:

> 8. A illegally carries on blasting operations next to the public highway. B, approaching in a car, ignores a conspicuous warning sign and a flagman who tries to stop him and informs him that there will be a delay of five minutes. B insists upon proceeding along the highway, and is injured by the blasting. B assumes the risk.
>
> 9. The A City clears the snow and ice from the sidewalk on one side of the street, leaving the sidewalk on the other side covered with ice, slippery, and visibly dangerous. B, having a free choice of either side, and fully understanding the risk, elects to walk on the icy sidewalk, slips, and is injured. B assumes the risk.

In each illustration, there is a reasonable safe choice readily available, and one which allows the "traveler" to reach his or her destination. When the "traveler" rejects the safe and reasonable choice, then there is assumption of risk. That the defendant must introduce evidence of an alternative safe route or course of conduct is supported by *Donald v. Moses*, 254 Minn. 186, 94 N.W.2d 255 (1959), where the Supreme Court of Minnesota, in rejecting the applicability of assumption of risk, approvingly quoted the trial court's reasoning that " 'no evidence was introduced to show alternative routes to the meat market which were safer than the route selected by plaintiff.' " *Id*. at 193, 94 N.W.2d at 260. The court in *Donald* imposed the burden upon the defendant to show the availability of a safer route. Although the Restatement of Torts (1934) did not have § 496 E and the *Donald* decision predates § 496 E, the *Donald* court's reasoning is sound and it is consistent with *Schwab v. Allou Corp.*, 177 Neb. 342, 128 N.W.2d 835 (1964), as well as with § 496 E, which Nebraska has adopted.

In a subsequent opinion acknowledging the difficulty of distinguishing between assumption of risk and contributory negligence with any precision, the Minnesota court once again required evidence of an alternative safe route before instructing on assumption of risk. *Parness v. Economics Laboratory, Inc.*, 284 Minn. 381, 170 N.W.2d 554 (1969). The *Parness* court observed that whether there was an alternative safe route or course of conduct is often a critical disputed fact. However, in the instant case, Leiserv has admitted that there was no alternative route for Dukat to leave the bowling alley and get to her car. Because the burden to prove the defense of assumption of risk is Leiserv's, which includes proof of the availability of a safe alternative route, and there was no such proof, we conclude that assumption of risk should not have been submitted to the jury. Our decision relies heavily upon *Schwab*, where the plaintiff could not leave her house to go to work without encountering ice. The evidence here shows that, similarly, Dukat could not leave the bowling alley to go home without using the icy sidewalk. Because *McDermott v. Platte Cty. Ag. Socy.*, 245 Neb. 698, 515 N.W.2d 121 (1994), seems to suggest that not getting out of one's vehicle, and thereby forgoing doing what one came to do or needs to do, is in fact the sort of alternative safe route or course of conduct contemplated by § 496 E of the Restatement, we find ourselves in the position of being unable to effectively reconcile *Schwab* and *McDermott*. We say this because obviously Schwab could have stayed home from work the day she was injured, just as McDermott could have returned to Lincoln. But, as observed, the court in *Schwab* did not suggest staying home as a consideration on whether assumption of risk was a submissible defense. The difficulty in applying *McDermott* to cases where the plaintiff is "traveling" from point A to point B is that there always will be, in any journey, given the usually perfect acuity of hindsight, an alternative safe course of conduct which can be articulated and which would have avoided the injury. In Dukat's situation, it could be staying in the bowling alley all night or, going back further in time, not leaving home in the first place. But, we do not believe that is what § 496 E of the Restatement contemplates because these

are, at the core, questions of what reasonable people would do. In other words, these are questions involving whether there was contributory negligence. To us, *Schwab* represents the appropriate application of the alternative safe route or course of conduct doctrine in conjunction with the defense of assumption of risk. We reconcile *Schwab* and *McDermott* by applying *Schwab*.

The evidence shows that in response to Dukat's interrogatory No. 8, "Does either of the defendants allege that the plaintiff had an alternate route that she should have taken from the door of the bowling alley to her car?" Leiserv and Brunswick (Brunswick was still a party during discovery) answered "No." Interrogatory No. 8 and its answer were read into the record by Dukat without objection. We conclude that Leiserv did not meet its burden of proving that Dukat voluntarily exposed herself to the risk of injury by walking on the icy sidewalk. We reach this conclusion because Leiserv did not introduce any evidence of an alternative safe route or course of conduct which would have allowed her to safely leave the bowling alley as she had a right to do and wanted to do.

Because Leiserv failed to prove the prerequisites for assumption of risk, it was error for the trial court to submit the issue to the jury. The submission of issues upon which the evidence is insufficient to sustain an affirmative finding is generally prejudicial and requires a second trial. *Mandery v. Chronicle Broadcasting Co.*, 228 Neb. 391, 423 N.W.2d 115 (1988). Error, to be reversible, must affect a litigant's substantial right. *Id.* Clearly, submitting a defense to the jury where there is no evidence to justify doing so affects a substantial right of Dukat.

Having found reversible error, we need not reach Dukat's assignment of error concerning the district court's failure to allow the rebuttal testimony of Naegelin because there will be a new trial which "moots" the argument about whether he should have been allowed to testify. However, we deem it necessary to discuss Dukat's other assignments of error because those questions may recur on retrial.

*Contributory Negligence.*

On the issue of contributory negligence, the jury was told in instruction No. 4, in part:

In defense to Plaintiff's claim, the Defendant claims that the Plaintiff herself was negligent in one or more of the following ways:

1. Failing to keep a proper lookout;

2. In failing to take notice of the condition of the area in which she was walking that a reasonable and prudent person in the same or similar situation would have noticed; and,

3. In failing to see open and obvious conditions in the area in which she was walking.

Dukat argues that the district court erred in giving this instruction because Leiserv failed to meet its burden.

When *contributory negligence* is pled as a defense and there is no competent evidence to support it, it is prejudicial error to submit to the jury issues involving contributory and comparative negligence. *Gustafson v. Burlington Northern RR. Co.*, 252 Neb. 226, 561 N.W.2d 212 (1997).

A plaintiff is contributorily negligent if (1) the plaintiff fails to protect himself or herself from injury; (2) the plaintiff's conduct concurs and cooperates with the defendant's actionable negligence; and (3) the plaintiff's conduct contributes to the plaintiff's injuries as a proximate cause. *Bray v. Kate, Inc.*, 235 Neb. 315, 454 N.W.2d 698 (1990). Contributory negligence is an affirmative defense which must be proved by the party asserting such defense. *Carpender v. Bendorf*, 246 Neb. 77, 516 N.W.2d 619 (1994). The distinction between assumption of risk and contributory negligence presents a difference which prevents interchangeable use of those defenses in a negligence action. *Mandery, supra.*

The Supreme Court of Nebraska has frequently held: "Where different minds may reasonably draw different conclusions or inferences from the evidence adduced concerning the issues of negligence or contributory negligence and the degree thereof when one is compared with the other, such issues must be submitted to the jury." *Sullivan v. Geo. A. Hormel and Co.*, 208 Neb. 262, 273, 303 N.W.2d 476, 482 (1981). See, also, *Swiler v. Baker's Super Market, Inc.*, 203 Neb. 183, 277 N.W.2d 697 (1979); *Jensen v. Hawkins Constr. Co.*, 193 Neb. 220, 226

N.W.2d 346 (1975); *Maxwell v. Lewis*, 186 Neb. 722, 186 N.W.2d 119 (1971).

Minds could reasonably differ on the evidence introduced with respect to Dukat's contributory negligence. It is a permissible inference from the record that the ice alone would not have caused the accident. It is clear from Dukat's testimony that she knew of the icy condition of the sidewalk as she entered the bowling alley and despite this knowledge may have done things a reasonably careful person might not have done. For example, the evidence shows that Dukat drank three beers while she was at the bowling alley and that she did not recall eating dinner that night. Dukat also decided to navigate the same icy path she had come in on without asking the assistance of one of her friends who remained inside the bowling alley. A reasonable person might also have asked management to spread an ice-melting substance on the sidewalk and delayed his or her departure.

Thus, reasonable minds could arrive at the conclusion that Dukat did not act as a reasonable person in one or more ways and that the slip and fall were contributed to by her own negligence. The trial court, therefore, was correct in submitting to the jury the question of Dukat's contributory negligence.

*Intoxication Instruction.*

We comment briefly on Dukat's argument that the trial court erred in "giving an instruction on intoxication." Instruction No. 15, submitted to the jury over objection, stated:

> Any evidence you find of the drinking of intoxicants by the Plaintiff shall not, by itself, be considered as negligence but is a circumstance which may be considered by you together with all other facts and circumstances in the case in determining the existence or nonexistence of negligence.

The instruction given is derived from *Raskey v. Hulewicz*, 185 Neb. 608, 177 N.W.2d 744 (1970). As we read *Raskey*, the instruction is designed to protect a litigant from a jury's "overreaction" to evidence that a litigant had been drinking, and to some extent it reminds us that intoxication and impairment are what is important on the question of how drinking relates to negligence or contributory negligence.

█ The given instruction differs from the Nebraska pattern jury instruction on intoxication, NJI2d Civ. 3.07. That instruction provides, "A person who is voluntarily intoxicated must exercise the same care as a person who is sober." Generally, the Nebraska Jury Instructions are to be used whenever applicable. *State v. Jordan*, 229 Neb. 563, 427 N.W.2d 796 (1988). But, the record is void of any evidence tending to establish that Dukat was impaired due to the influence of alcohol. Impairment cannot be inferred merely from the consumption of three beers at an unspecified "pace" during a 3-hour timeframe. As said in *Raskey*, where there is no evidence presented as to the effect of intoxicants, it is not proper to submit that issue directly to the jury. A new trial has been ordered; therefore, whether any instruction about drinking or intoxication should be given must await the evidentiary presentation at the second trial.

## CONCLUSION

In view of our determination that the district court committed reversible error by submitting the defense of assumption of risk, the judgment of the district court is reversed, and the cause is remanded to the district court for a new trial.

REVERSED AND REMANDED FOR A NEW TRIAL.